FRANK HAUSERMAN, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLAY, *Appellant.*

No. 18,142.

SYLLABUS BY THE COURT.

1. STATUTES REVISED—*Parts Omitted Ordinarily Considered as Annulled.* When a statute is revised, some parts being omitted, the omitted parts are not readily to be supplied by construction, but are ordinarily to be considered as annulled.

2. ———— *Same.* The explicit repeal of the precise portion of a statute in which a power is expressly conferred ordinarily forbids the continued existence of the power being implied from the retention of language incidentally referring thereto.

3. ———— *Highways — Allowance by Viewers — Commissioners Can Not Revise.* Where in amending the section of the statute relating to the award of damages occasioned by the laying out of a highway, a sentence was omitted, in which a power to revise the allowance made by viewers had been given in distinct and express terms to the county commissioners, the omission must be regarded as indicating a purpose to deprive the commissioners of such power, notwithstanding a part of the section which remains unchanged, allowing an appeal to the district court on the question of the amount of damages, describes such appeal as one taken from the decision of the commissioners.

Appeal from Clay district court. Opinion filed May 10, 1913. Affirmed.

*W. T. Roche,* county attorney, *C. Vincent Jones,* and *F. L. Williams,* both of Clay Center, for the appellant.

*F. B. Dawes,* and *R. C. Miller,* both of Clay Center, for the appellee.

The opinion of the court was delivered by

MASON, J.: Upon receiving a petition for the laying out of a highway, the board of county commissioners appointed viewers, who reported in favor of the road. The report included an appraisement of the damages of Frank Hauserman at $300. The commissioners on

July 8, 1911, ordered the road opened, but reduced Hauserman's allowance to $200. Two days later they considered the matter further and reduced the amount to $150. Hauserman appealed to the district court, the parties stipulating that the only question in controversy was whether the board of county commissioners had power to alter the award of damages made by the viewers. The trial court decided in favor of Hauserman, and the board appeals.

The sole question presented is whether, under the law as it now stands, the allowance of damages made by viewers, appointed upon a petition for the laying out of a highway, is subject to revision by the board of county commissioners. Prior to 1903, when a petition for a road was presented, the commissioners were *required* to appoint three viewers, who upon investigation made a report upon the necessity of the road and the amount of damages that should be allowed if it were opened. (Laws 1874, ch. 108, § 3.) In that year the legislature concluded to give the commissioners the option, either to appoint viewers, as had theretofore been done, or to make the view in person. (Laws 1903, ch. 411.) To accomplish this change all the sections of the road law containing reference to the viewers were amended. Wherever the word "viewers" occurred the phrase "commissioners or viewers" was substituted, and where the old statute required the viewers to make a "report" to the commissioners the language of the new statute was adapted to fit action either by the board or by viewers and required the result of the view to be embodied in a "certificate" filed with the county clerk. A few other alterations were also made. The determination of the present case turns upon the effect to be given to the change made in section 7 of the law of 1874 by section 4 of the act of 1903. The precise character of this change is shown by the following copy of the section as amended, the

new words added being printed in italics and the old words omitted being inclosed in brackets:

"It shall be the duty of the *commissioners or* viewers, at the same time they make their [report] *certificate* of the view, to make also a separate [report to the county commissioners] *certificate* in writing stating the amount of damage, if any, by them assessed, and to whom, and submit therewith the written application upon which the assessments have been made. [All allowance for damages, as provided in this act, shall be subject to revision by the said board of county commissioners, and] Any person feeling himself aggrieved by the award of damages made by the board of county commissioners may appeal from the decision of said board of county commissioners to the district court upon the same terms, in the same manner and with like effect as in appeals from judgments of justices of the peace in civil cases." (Laws 1903, ch. 411, § 4.)

The section was reënacted in 1911, in the course of a revision of the road laws, a slight change being then made, which is not here important. (Laws 1911, ch. 248, § 7.) The landowner, Hauserman, maintains that the county board was deprived of the power to revise the amount of damages reported by the viewers, by the striking out of the words: "All allowance for damages, as provided in this act, shall be subject to revision by the said board of county commissioners." Such would seem to be the natural effect of the change, in the absence of anything to suggest the contrary. But, on the other hand, it is argued that the retention unchanged of the concluding portion of the section, allowing an appeal from the award of damages *made by the board of county commissioners,*" shows by clear implication that the amount is still to be fixed by them. It is also argued that it is unlikely the legislature intended to place upon the commissioners the duty of defending, in the interests of the county, an award which they did not make, and had no power to change, and that the statute should not be deemed to effect that result, if any other reasonable construction is open.

It seems quite clear that the striking out of the sentence in question either deprived the commissioners of the power to review the award of damages made by the viewers, or it had no practical effect whatever. The question for determination, therefore, is whether the words explicitly conferring a right of revision upon the commissioners were omitted from the new act because of a change in legislative policy or because they were regarded as surplusage. Ordinarily there is a presumption that a change in the language of a statute results from a purpose to change its effect, but this presumption may be strong or weak according to circumstances, and may be wanting altogether in a particular case. The accepted rule and its limitations have been thus stated:

"It will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. A change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended; this presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the laws, as in such case the change of phraseology may be due to a rearrangement of the statutes or to a desire to improve the style." (36 Cyc. 1165.)

The act of 1903 can not be regarded as a general revision of the act of 1874. Only seven sections out of thirty-three were affected. But even in a revision the dropping out of a material provision is deemed equivalent to its express repeal.

"It is a well settled rule, that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled." (*Ellis v. Paige*, 1 Pick. [18 Mass.] 43, 45; *Lyon v. Smith*, 11 Barb. [N. Y.] 124, 126; *Pingree v. Snell*, 42 Maine, 53, 55.)

If the new statute were to be considered alone, as an original enactment, without regard to its history, there would be little difficulty in inferring, from the reference to an appeal from the decision of the commissioners, that the legislature intended them to revise the award of the viewers. But we think such an inference should not prevail here, because a stronger evidence of the purpose of the legislature is afforded. For years the statute contained a sentence which in clear and express terms granted to the commissioners the power of revision. The striking out of this sentence shows that the attention of the legislature was particularly drawn to the matter, and has almost the force of a declaration that the power should no longer exist. The part of the statute conferring upon the commissioners the power of revision is expressly repealed. (1 Lewis' Sutherland Statutory Construction, 2d ed., pp. 442, 459.) Of a similar situation it has been said:

"Where the legislative body, in amending an act, omits certain limitations expressed in the original act in simple language, plain in its meaning, the presumption of law is that the limitation no longer exists, at least in the absence of other express words showing that it was intended to continue. Neither ambiguous nor uncertain language will prevail against such an express omission." (*United States v. Prentis*, 182 Fed. 894, 897.)

The territorial statutes made the findings of the viewers conclusive. (Gen. Stat. of Kan. Ty. 1855, ch. 139, §§ 15, 19.) In 1861 a new statute was enacted, which is the basis of our present law. The viewers were therein designated as "a jury to assess and determine the compensation to be paid in money for the property sought to be appropriated." (Compiled Laws 1862, ch. 176, §§ 19, 21.) No provision was made for an appeal from their verdict, but the county commissioners were vested with the authority to determine whether or not the road should be established. (§§ 22, 23.) The law was revised in 1864, when the words

were inserted: "All allowance for damages, as provided in this act, shall be subject to revision by the said board of commissioners." (Laws 1864, ch. 112, § 7.) In 1868 there was added to these words, as a part of the same sentence, the provision for an appeal to the district court on the question of damages. (Gen. Stat. 1868, ch. 89, § 7.) The right of revision was therefore in fact conferred upon the commissioners by the words now under consideration, which were stricken out in 1903. The provision granting the right of appeal naturally spoke of the decision appealed from as that of the commissioners, as it was attached to the sentence giving them the authority to revise the action of the viewers. The only change it made in the law was by conferring the right of appeal. It can be given all the effect it ever had without finding in it authority for a revision by the commissioners of the viewers' award of damages. The language of the sentence relating to an appeal can be reconciled with the theory that the appeal lies from the award made by the reviewers by regarding the viewers as the agents of the commissioners and considering the commissioners as acting through them. The commissioners may act in person, or they may appoint viewers. If they appoint viewers the award made is still, in a sense, that of the commissioners. The statute of 1903 as published provides for the appointment of three householders "as viewers *with* said commissioners." In the enrolled bill the phrase is "as viewers of said commissioners." The difference is not material, but the authentic language illustrates the conception that the viewers act for the commissioners.

In *Bierer v. Blurock,* 9 Wash. 63, 36 Pac. 975, a situation was presented quite similar to that under consideration. An amendatory statute left out an important provision, and the omission was given the effect of changing the rule of law on the subject, although as a result a portion of the section which had

been based upon the omitted provision was thereby made unintelligible.   The full scope of the decision is shown by this extract from the opinion:

"To determine the intent of the legislature  .  .  . it is necessary that we should look at the section amended and compare it with the amendatory section. By doing so it will be seen that the amendatory section corresponds entirely with the amended one except that there is omitted the following language found in the old section: 'And such assignment shall have the effect to discharge any and all attachments under which judgments shall not have been taken at the date of such assignment.'   There could have been but one object in the incorporation of this language in the old section, and that was to provide that proceedings under the statute should discharge the lien of attachments.   Such having been the object, its omission in the amendatory section must have been for the contrary one; that is, to provide that such liens should not be discharged by proceedings under the law.   If there had been other changes made in the old section there would perhaps have been room to have argued that such other changes were the ones which influenced the legislature in passing the amendatory section; but such was not the case. The only change made was the omission of the language above quoted, and only one object could have been intended thereby, and that was to change the rule which was established by the former law as to the effect of the proceedings thereunder upon attachment liens, so that after the passage of the amendatory section they would not be affected thereby.

"It is argued on the part of the appellant that the latter portion of the amendatory section can not be so construed as to make sense unless it be assumed that the references therein are to the provision as to attachment liens in the old section; but even if this is so it would not authorize the court to hold that such reference kept in force a provision of the statute which by express enactment had been repealed; nor would it authorize the assumption that the claims referred to in the amendatory section were those which had been provided for in the section amended but as to which no provision was made.   Even if all of the amendatory

36—89 KAN.

section after the words 'respective claims' is so uncertain as to be incapable of interpretation by the courts, such fact could only require that these provisions should be disregarded and the preceding portion of the amendatory section held to be all that is left of the old section." (p. 65.)

Much of this reasoning is in point here. One important distinction, however, is to be noted. In the present case, apart from the desire to strike out the omitted words, it was necessary to amend the section in which they occurred. The original section referred to the duty of the viewers, and to the making of their report. The option given to the commissioners to act in person required the references to be to the duty of the "commissioners or viewers," and to the making of a certificate instead of a report. In this respect the argument of the Washington case does not fully apply. However there was no general revision of the road law by the act now in question, and we feel constrained to hold that the omission of so important a sentence as that discussed can not be looked upon as a mere verbal alteration, but must be given effect as working a substantial change in the law. The deliberate striking out of the words in which the power of review is plainly, specifically and expressly conferred seems such a clear indication of the legislative will to withdraw the power that a purpose to retain it ought not to be inferred from a failure to change language in which the matter is referred to only incidentally. It does not follow that where the commissioners make the view in person they may not alter the amount first agreed upon as a suitable award of damages. Such a construction is not necessary in order that the omission of the words in question may effect a change in the meaning of the statute. A reconsideration by the commissioners of their own original opinion is a very different matter from an alteration of the decision by another tribunal—even one of their own selection.

Hauserman v. Clay County.

The suggestion is made that if the statute allows the viewers to fix the damages and prevents a change by the commissioners, it is unconstitutional because of conferring legislative power upon the viewers.   The question whether or not a road shall be established is one of legislative policy, and in all cases is finally decided by the commissioners.   But the ascertainment of the amount of damages thereby occasioned is judicial, and may be left to whatever tribunal the legislature may select for the purpose.   (15 Cyc. 872.)

The judgment is affirmed.

WEST, J. (dissenting) :  A mechanical application of rules of statutory construction is often fatal to sound reasoning and prohibitive of just results.   While ordinarily it is true that an amendment which leaves out of a former statute a certain provision conferring power is intended to take away such power, still the syllogism depends for the soundness of its structure upon the integrity of its premises.   If the only legislative grant of power to county commissioners touching an award of damages for laying out a highway were found in the words omitted from the act of 1903, the conclusion arrived at in the foregoing opinion would be irresistible.   However, the statute has all along given the board power to lay out, alter or discontinue roads and to perform such other duties respecting roads as may be provided by law.   (Gen. Stat. 1909, § 2075, subdiv. 8.)   It has exclusive control of all expenditures accruing in the publication of delinquent tax lists, treasurer's notices, county printing "or any other county expenditures."   (§ 2100.)   Before the act of 1903 took effect the board was required to appoint viewers to assess damages and was not authorized to perform this duty itself; therefore it was necessary for the board to have power to revise the report of the viewers, and in order that there might be no mistake

about the matter such authority was expressly given in section 7 of chapter 108 of the Laws of 1874:

"All allowances for damages, as provided in this act, shall be subject to revision by the said board of county commissioners."

The act of 1903 empowered the board to appoint and use viewers to assess damages or to act with them or to act without them. It was made the duty of the commissioners or the viewers, or a majority of them, to meet. Instead of the report theretofore required to be made by the viewers it was provided by section 4 that the commissioners or viewers should make a certificate in writing, stating the amount of damages, if any, by them assessed and to whom, and the former provision was left in, that any person feeling himself aggrieved by the award of damages made by the board might appeal from its decision. It was decided in *Holmes v. Ward,* 85 Kan. 618, 118 Pac. 88, that "the members of the board may themselves act as viewers without appointing anyone else for the purpose." (p. 619.) This being the evident intent of the legislature the result of the foregoing opinion is that if the commissioners act without viewers they can not revise their own certificate of damages, an absurdity not to be imputed to the legislature without good reason.

It was deemed prudent to authorize the county commissioners to assess road damages, either with or without the help of viewers appointed by them, and as they might act by themselves or in conjunction with viewers or by viewers only it was thought proper to require a certificate to be filed with the board in any event showing the amount of damages assessed. The same right of appeal from the decision of the board was retained and no right given to appeal from an assessment made by viewers who act apart from the commissioners. No reason is apparent why the mere removal of superfluous verbiage from the former statute should require

a holding that now the board is bound by a certificate made by viewers appointed by itself any more than it is by a certificate made and returned by itself to itself. Doubtless the legislature had in view the general rule that the board of county commissioners has control over county expenditures and intended it to retain such control in this as in other cases. No harm can arise from this construction, because the aggrieved land-owner can still appeal and present his claim to a jury of his peers. The amendment simply amounts to saying that a board which can now do by itself what it could formerly do only by viewers appointed by itself does not need an express grant of power to review an assessment made by such viewers, from which assessment no appeal is given. Retaining the right of appeal from an award made by the board presupposes that it may revise the assessment made for it by the viewers, the same as it may review its own assessment. Until the board has acted on the certificate no award is made, and it is the award or final decision from which the appeal is taken.

I am authorized to state that CHIEF JUSTICE JOHNSTON and MR. JUSTICE BENSON concur in this dissent.