No. 45,924

CLAY TOWNSHIP, RENO COUNTY, KANSAS, *Appellant*, v. WARREN D. PEBLEY and PHYLLIS JEAN PEBLEY, (Interpleaders) and CHARLES HEIDEBRECHT, Sheriff of Reno County, Kansas, *Appellees*.

(483 P. 2d 1101)

Opinion filed April 10, 1971.

*Frank S. Hodge,* of Hutchinson, argued the cause, and *H. Newlin Reynolds* and *Dennis O. Smith,* both of Hutchinson, were with him on the brief for the appellant.

*Kerry J. Granger,* assistant county attorney, argued the cause, and *Raymond F. Berkley,* county attorney, was with him on the brief for appellee Charles Heidebrecht.

*Kenneth F. Ehling,* of Hutchinson, argued the cause, and *Clyde A. Raleigh,* of Hutchinson, was with him on the brief for the appellees Warren D. Pebley and Phyllis Jean Pebley.

The opinion of the court was delivered by

HARMAN, C.: Here a township seeks to restrain a sheriff from levying an execution issued to satisfy a judgment rendered against the township on an appeal by landowners from an award of damages for opening a township road. The principal question now

is, which is liable for the award—the township or the county? Reno county has not adopted a county unit road system.

In August, 1967, pursuant to K. S. A. 68-102, *et seq.*, a petition signed by twelve householders was filed with the Reno county board of commissioners to lay out and open a road in Clay township one mile in length. (For several years prior to this time the Clay township board had been arguing about the proposed road, trying to get the county commissioners to go ahead and open the road.) The members of the county board appointed themselves as viewers to view the proposed road and assess damages. Statutory notice to the public and the landowners involved was given. The county board viewed the property and by resolution dated November 1, 1967, assessed damages for land taken in the sum of $178.36 to Warren D. Pebley and his wife, Phyllis Jean Pebley. The board also assessed damages in a lesser amount to another landowner. At some time thereafter a Mr. Thode in the Reno county engineer's office delivered a letter to the trustee of Clay township stating the township should pay the awards allowed.

November 9, 1967, the Pebleys filed with the Reno county clerk their notice of appeal from the board's award, along with an appeal bond and an application claiming $14,000 in damages. December 1, 1967, the county clerk filed all papers in the proceeding with the clerk of the district court of Reno county.

December 9, 1968, the township board mailed to Mr. Pebley its warrant for $178.36. At the same time it paid to the other landowner the amount awarded by the viewers. By letter dated January 18,1969, the Pebleys through their attorneys returned the warrant to the township board. The letter stated, "As you know, these folks have appealed the award of damages".

On February 4, 1969, jury trial on the appeal was concluded in the district court of Reno county and a verdict was returned awarding the Pebleys the sum of $1,750 as damages to their property. Judgment against Clay township was entered upon this verdict. The Reno county attorney defended the action.

On July 1, 1969, the judgment remaining unpaid, the Pebleys caused execution on it to be issued against the property of Clay township. August 15, 1969, the township commenced this proceeding by filing its petition wherein it sought to have the Reno county sheriff perpetually enjoined from taking any action on the execution. The Pebleys were permitted to interplead in this action.

Issues were joined, hearing was had and on September 23, 1969, the trial court ruled Clay township was liable for the damages awarded by the jury and it denied injunctive relief. This appeal ensued.

Appellant Clay township's first contention is that the county, not the township, is by statute liable for the payment of damages incurred in opening the road.

The road is admittedly a township road.

We briefly review certain statutes applicable to township roads, all found in K. S. A., Chapter 68.

Section 102 provides that applications for laying out roads shall be by petition to the board of county commissioners, certain requisites for an application being stated.

Section 104 provides that upon finding such a petition to be proper in form, with proper bond filed, the commissioners shall appoint viewers, who may be the county commissioners, who, after notice has been given, shall view the property and give all parties a hearing. 105 prescribes the form of notice.

Section 106 gives further direction to the viewers in carrying out their duties and provides they shall determine the amount of damages sustained by any person through whose premises the road is to be established. Upon approval by the commissioners and recording of the proceedings an order is to be issued by the county surveyor to the township trustee directing opening of the road for public travel.

Section 107 provides that any person feeling aggrieved by the award of damages may appeal to the district court upon the same terms, in the same manner and with like effect as in appeals from judgments of justices of the peace in civil cases. Provision is also made for the creation of special benefit districts in particular situations with partial payment of the damages under a prescribed formula to be made by assessment of the land specially benefited by establishment of the road.

Section 114 provides generally for making changes in roads for the purpose of improving them in the interest of safety, including their laying out and relocation. Necessary laying out or relocation is to be by order of the board of county commissioners. The board is to determine applications for damages caused thereby, which amounts are to be paid from the general or road fund of a county in case of county roads and from the township road fund on township roads.

Section 115 provides that the township trustee has **the duty to** open all township roads and keep them in repair and free of obstruction. Material used is to be paid by the township board.

Section 518c authorizes a township located in a county not operating under the county unit system to levy an annual tax for road purposes, including the construction of township roads.

Section 526 places general charge and supervision of township roads in the township board.

Finally, section 560 provides a method whereby the township may turn over the construction, maintenance and repair of township roads to the county.

No statute explicitly states who shall pay the damages awarded for laying out and opening a township road.

For its contention the county is liable to pay to the landowner the amount of the award appellant principally relies upon a single sentence found in section 107 which states:

"The net amount of damage to be paid to acquire such land so condemned shall be advanced by the county from its general fund and it shall thereafter receive and collect benefits in the manner provided for above and place the same with interest thereon to the credit of its general fund."

Even in isolation the application of this proviso to the case at bar appears questionable. As already indicated, 107 provides for the creation of benefit districts where real estate is specially benefited by the location and opening of particular roads, with partial payment thereof to be made by assessment against the land so benefited, to be collected in the same manner as are general taxes over a period of five years if not immediately paid in a lump sum.

Obviously the sentence relied upon must be read in connection with the lengthy section from which it is lifted, and so considered, it clearly pertains only to initial payment by the county of an award to a landowner in a benefit district determined under the statute, with subsequent reimbursement to be made by landowners in the benefit district. Here no such benefit district was ever created and is not involved, and the sentence relied upon fixes no liability upon the county.

The participation of the board of county commissioners with respect to opening or laying out a township road appears to be limited. If it appoints third parties as viewers under what is now section 107, it has no power to alter the award (*Hauserman v. Clay County*, 89 Kan. 555, 132 Pac. 212). County commissioners or viewers act in a judicial or quasi-judicial capacity in determining

the damages allowable to a landowner upon a road opening (*Larkin v. Nemaha County Comm'rs,* 170 Kan. 164, 223 P. 2d 987; *Hauserman v. Clay County,* supra). The role of the county board in determining damages thus appears to be one of an impartial tribunal rather than a partisan representative acting in behalf of the county and we cannot spell out legislative intendment that by reason of the board's participation in laying out a township road and awarding damages the county is to pay the damages awarded.

The statutes we have mentioned make it clear the township board has the responsibility of opening, constructing, maintaining, repairing and improving township roads. The township has special taxing powers with which to accomplish this. Under section 114 a township is specifically required to pay the damage to landowners when a township road is laid out or relocated for the purpose of eliminating a sharp turn or other dangerous place. This being true, we have difficulty in seeing any reason why the township should not be expected to pay the damage to landowners caused by establishment of the road in the first place.

Appellant tries to spell out legislative distinction between the terms *establishing* and *opening* as applied to township roads, arguing it is the county's sole problem to lay out or establish such a road, while the duty to open the road for traffic is cast upon the township. We cannot subscribe to this theory. Rather we believe the clear statutory import and the only logical construction is that the township is liable for the damages arising from the laying out and opening of a township road and we so hold.

Appellant further contends entry of judgment against it deprives it of property without due process of law because it was never legally notified of the proceedings in which damages were assessed and was never a party to those proceedings.

Appellant recognizes that under section 107 appeals from the viewers' award are to be taken in the same manner as appeals from judgments of justices of the peace in civil cases, and under K. S. A. 61-1001, then in effect, such appeal is by notice of appeal filed in the court from which the appeal is taken, and further that notice to the opposing side is not required (see *Wald v. Bukaty,* 139 Kan. 489, 491, 32 P. 2d 456). However, appellant argues that two further statutes should be read in connection with the appeal provision, namely, K. S. A. 19-223 and 19-224, which establish a procedure generally for appealing from decisions of the board of

county commissioners. It is not readily apparent how appellant would have been in any better position had the particular procedure mentioned been followed; however, for two reasons the cited statutes were not pertinent: First, the appeal taken by the landowners herein was not from a decision made by the board of county commissioners sitting as such—rather it was from a decision of a statutory tribunal specially authorized to allow damages; second, where a statute specifically provides for an appeal, an appeal is to be governed by those provisions rather than by a general statute. The applicable statute was complied with in every respect in perfecting the appeal.

Resort to the record on the subject of notice of the proceedings reveals the following. The first signer on the initial petition to lay out the road was the then Clay township trustee. This official was present at the viewing. After the award was made the township clerk, who later became trustee, received advice from the county engineer's office that the township was to pay the amounts awarded and warrants were issued to the landowners; this officer also knew the Pebley award had been appealed. The new clerk knew of the appeal. The Pebleys' letter returning the warrant to the township treasurer stated the award had been appealed. On January 19, 1969, the township treasurer conversed by telephone with one of the Pebleys' attorneys and was advised of the exact date of trial of the appeal in district court. The treasurer testified his understanding was the county commissioners were the "guardian" of the township board and would be looking after its interest in the appeal. Thus it appears the township board was aware of the proceedings throughout their entire course. That appellant defaulted in participation in the appeal, for whatever reason, was a matter of its choice and can in no wise constitute lack of due process of law.

Appellant further contends the county is estopped to deny liability on the judgment because the county attorney assumed defense of the appeal in district court. Little more need be said. When the case came on for trial in the district court some confusion evidently existed as to the proper role of the county attorney. However, there is no showing anyone did anything to prevent the township board from participating in the appeal or to mislead it in any way to its detriment. The elements of estoppel simply do not exist (see *Pelischek v. Voshell*, 181 Kan. 712, 717, 313 P. 2d 1105).

No invalidity is shown in the judgment upon which the execution was issued and the trial court properly denied the injunction sought.

Judgment affirmed.

APPROVED BY THE COURT.