No. 47,157

In the Interest of JACK LEROY WATERMAN II, A Child Under the Age of 18.  STATE OF KANSAS, *Petitioner,* v. JACK LEROY WATERMAN II, *Respondent.*

(512 P. 2d 466)

Opinion filed July 14, 1973.

*James E. Rumsey,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of counsel, Wichita, were with him on the brief for the petitioner.

*Patrick F. Kelly,* of Render, Kamas & Kelly, of Wichita, argued the cause and was on the brief for the respondent.

The opinion of the court was delivered by

FONTRON, J.: This is another case originating in juvenile court in which that court held a hearing under K. S. A. 1972 Supp. 38-808 (*b*) to determine whether or not to waive its exclusive jurisdiction and direct the prosecuting attorney to prosecute the juvenile under the appropriate criminal statutes. However, the posture of this case on appeal differs from the others which have come before us concerning the construction of 38-808 (*b*) in that here the juvenile court refused to waive jurisdiction and the state has appealed from that ruling—a complete reversal of the usual situation where the juvenile has appealed from an order waiving jurisdiction.

A brief outline of the facts is needed. In June 1971, Jack Leroy Waterman II was charged with two acts of delinquency in the possession and sale of marijuana. He was found to be delinquent and was probated to his parents. On July 28, 1972, Waterman was charged with an additional act of delinquency in possessing marijuana. Three days thereafter, on July 31, a third petition was filed in juvenile court charging two acts of delinquency, (1) premeditated murder and (2) armed robbery. Both of the latter acts were alleged to have occurred on July 18, 1972, just 28 days short of Waterman's eighteenth birthday.

A referral hearing was commenced August 11, 1972, at which time two members of the court's staff, a counselor supervisor and a clinical psychologist, testified in effect that Waterman had emotional and psychiatric problems and expressed the opinion he would not be amenable to the facilities, treatment and program available to the juvenile court.

At the conclusion of the hearing the juvenile judge, being unsatisfied that all available dispositions other than referral to district court had been explored and exhausted, and being particularly mindful of the views expressed by this court in the recent case of *In re Patterson, Payne & Dyer,* 210 Kan. 245, 499 P. 2d 1131,

continued the hearing to an open date and announced that he would arrange to have Waterman taken to the Larned State Hospital for psychiatric examination by doctors serving at that institution.

The record reflects that the hearing was reconvened October 11, at which time it was discovered that the medical findings were still inconclusive and the doctors needed further time for evaluation. Accordingly, the hearing was continued a second time.

On March 13, 1973, the hearing was resumed and medical testimony was presented to the effect that Waterman was suffering from mental illness diagnosed as adjustment reaction of adolescence; that the illness was amenable to treatment; and that the facilities needed to treat that type of mental illness were available at the Larned Hospital in the Dillon, or security, section of the hospital, an area which was available to the Boys' Industrial School. Dr. Robert A. Haines, Director of Institutional Management and Health Services, Department of Social Welfare, testified in substance that if Waterman was found to be a delinquent based on the current charges, it was possible for him to be admitted to the hospital for treatment of his mental illness. In other words, as we understand the evidence, while Waterman would not be accepted at the Boys' Industrial School, he could be admitted to the hospital's security ward as boys domiciled at the school were admitted. At the conclusion of the hearing the juvenile court found Waterman amenable to the juvenile program and entered an order retaining jurisdiction.

The state appealed this decision to the district court where a *de novo* hearing was held April 5, 1973. Essentially the same evidence was introduced at this hearing as had been presented in juvenile court. The district court likewise found Waterman amenable to the care and treatment available through the juvenile facilities and sustained the juvenile court in its retention of jurisdiction. The state once again appealed, this time to the supreme court, and Waterman has filed a cross-appeal.

The sole point raised by the state is phrased in these words:

"Since the Reasonable Likelihood of Successful 'Care, Treatment and Training' of a Juvenile Before He Reaches the Age 21 Years Is a Critical Element of 'Nonamenability,' the District Court Committed Prejudicial Error in Excluding Evidence Regarding That Element."

In this connection the state contends the court excluded all evidence on the question of whether there was a reasonable likeli-

hood of successful treatment before Waterman reached the age of twenty-one years, at which age he would no longer be subject to the juvenile court's jurisdiction. As we look at the record, which contains an undue amount of verbatim verbiage, we harbor some doubt that evidence on that point was entirely excluded.

Be that as it may, we do not reach the question posed by the state, for we believe the appeal must be dismissed on jurisdictional grounds. The juvenile code sets forth its own appellate procedures in K. S. A. 1972 Supp. 38-834. Subsection (*a*) recites that the provisions of the section do not apply to appeals under K. S. A. 38-833 (relating to appeals of persons convicted of contributing to the delinquency, dependency or neglect of children.) Subsection (*b*) provides as follows:

"An appeal shall be allowed to the district court by any child from any final order made by the juvenile court, and may be demanded on the part of the child by his parent, guardian, guardian *ad litem* or custodian, or by any relative of such child within the fourth degree of kinship. Such appeal shall be taken within thirty (30) days after the making of the order complained of, by written notice of appeal filed with the judge of the juvenile court, which shall specify the order appealed from. It shall be the duty of the judge of said court, without unnecessary delay, to transmit a transcript of the record of the case to the district court of his county."

Subsection (*c*) provides that an appeal shall not suspend or vacate the order appealed from, but the same shall continue in force until final judgment is rendered in district court, provided the district judge may modify the juvenile court order pending appeal, on such conditions as to him may seem proper. This subsection provides also that the case shall be heard and disposed of in accordance with the provisions of the act and in the exercise of the powers and discretion given the juvenile court. Subsection (*d*) recites that the clerk of the district court shall certify the district court judgment to the juvenile court, which shall then proceed in accordance therewith. Subsection (*e*) provides that the appellant shall serve notice of appeal on the adverse party or his attorney within the thirty-day time specified in subsection (*b*). Subsection (*f*) recites that whenever a party gives notice of appeal in good faith but omits through mistake to do any other act necessary to perfect the appeal, the district court may permit amendment on such terms as may be just. In subsection (*g*) it is provided that a record of the district court proceedings shall be filed and made a part of the files of the case.

It will be noted that nowhere in the statute is any provision made

for the state to appeal to district court; only the child or someone acting in its behalf is so authorized. We believe the omission is significant and meaningful.

The juvenile court act is a comprehensive inclusive act covering the entire field of juvenile delinquency, miscreancy, dependency and neglect, and it provides its own specific procedures. It is full and complete within itself. It governs an area which is distinctly unique; where the position of the state is that of *parens patriae;* and where the juvenile court serves as an arm of the state, acting as will best serve the child's welfare and the best interests of the state. (K. S. A. 38-801.) In furtherance of this laudable design the legislature has seen fit in K. S. A. 1972 Supp. 38-834 (*b*) to provide for an appeal by any child, or by certain designated parties acting on its behalf, from any final order of the juvenile court. In construing the statute in the past we have held that an order of the juvenile court waiving its jurisdiction under the provisions of 38-808 is a final order, from which the child may appeal, and that on appeal the matter is trial *de novo* in district court. (*In re Templeton,* 202 Kan. 89, 447 P. 2d 158.) The fact that the legislature saw fit to provide for an appeal by the child would seem persuasive that by not providing for an appeal by the state, the legislative intention was that there be no appeal by the state. (See *Evans v. George,* 162 Kan. 614, 619, 178 P. 2d 687.)

The right to an appeal is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken. (*Kansas City v. Dore,* 75 Kan. 23, 88 Pac. 539; *City of Hutchinson v. Wagoner,* 163 Kan. 735, 186 P. 2d 243; *Murrow v. Powell,* 167 Kan. 283, 205 P. 2d 1193; *Evans v. George,* supra.)

An analogous situation was before this court in *Norman v. Consolidated Cement Co.,* 117 Kan. 643, 274 Pac. 233. The action was one to recover compensation under the 1927 Workmen's Compensation Act. Both parties appealed to the district court from an award by the commissioner, and the employer thereafter attempted to appeal to the supreme court from the award entered in district court. The Act did not provide for appeal from judgments entered in district court. The appellant contended, however, that the provisions of the civil code relating to appeals were applicable. This contention was rejected, and the appeal was dismissed by this court. In the opinion it was said that the Workmen's Compensation Act

was comprehensive and complete and that the supreme court lacked jurisdiction to review the district court's decision.

To similar effect is *National Bank of Topeka v. State*, 146 Kan. 97, 68 P. 2d 1076. In that case an action was commenced before the state inheritance tax commission for the abatement of inheritance taxes. The commission refused to abate the greater part of the taxes levied, and the executor filed a petition in district court to review the commission's order. The district court entered judgment in favor of the executor and the commission appealed the decision to the supreme court. The applicable statute made no provision for an appeal from the district court's review of an order of the inheritance tax commission, and it was held that without such a provision in the law this court could not arbitrarily assume jurisdiction. The court noted that with respect to income taxes the legislature had seen fit to provide for appeals not only from the tax commission to district court but from district court to the supreme court, as in civil cases, but that no such provisions were made with respect to inheritance taxes.

We believe our cases on the subject are in general accord with authorities elsewhere. In 47 Am. Jur 2d, Juvenile Courts, Etc., § 60, p. 1031, the text recites:

"There are statements in the decisions indicating that in the absence of an express statutory authorization, there is no right to appeal from a juvenile court's determinations. . . ."

Cases from a number of jurisdictions are cited in support of the text. In one of them, *Ginn v. Superior Court, in and for County of Pima*, 1 Ariz. App. 455, 404 P. 2d 721, it was said:

"No provision is made in the juvenile laws for an appeal from the juvenile court to this court. Absent a provision for appeal, we hold that there is no right of appeal. . . ." (p. 458.)

The Arizona court went on to say that the statute prescribing the procedure for juvenile courts was complete in itself, and the general statute relating to appeals from the superior court had no application. (See, also, *Marlowe v. Commonwealth*, 142 Ky. 106, 133 S. W. 1137; *Wissenburg v. Bradley*, 209 Iowa 813, 229 N. W. 205, 67 A. L. R. 1075.)

A good many states have incorporated appellate provisions in their juvenile codes which clearly infer that any person or party may appeal from a final order of the juvenile court. The Tennessee statute, for example, provides in substance that where a juvenile court makes any disposition of a child, either aggrieved party,

*including the state or a subdivision thereof*, may appeal to the circuit court, where the case will be tried *de novo*. The statute with which we are dealing here contains no such language, although we are not prepared to say the legislature could not adopt similar broad appellate provisions should it be so inclined.

It may be worth noting that the forerunner of K. S. A. 1972 Supp. 38-834, enacted in 1905 as part of the act establishing juvenile courts (L. 1905, ch. 190, § 12), provided that an appeal should be allowed to the district court *by any child* from a final order of commitment, and might be demanded on its behalf by the parent, guardian, custodian, etc. Except for the fact that the 1905 act, and subsequent re-enactments, referred only to appeals from *an order of commitment* whereas the statute now refers to appeals *from any final order*, the language of the past and present acts are for the most part quite the same. So far as we can ascertain, the present case presents a first-time effort on the part of the state to appeal from any final order of a juvenile court relating to a delinquent child.

It appears from the record that counsel for the state, when responding to Waterman's motion to dismiss the appeal to district court, suggested that it would not be fair to allow an appeal to a juvenile, while denying it to the state. We shall not debate the merits of that question—although there might be no great difficulty in justifying the distinction—for in our opinion *Sprague Oil Service v. Fadely*, 189 Kan. 23, 367 P. 2d 56, may be said to dispose of any legal objection. In that case the director of revenue appealed to district court from an order of the board of tax appeals. The district court dismissed the appeal on the ground that the director had no right to appeal from the board's order. The applicable statutes provided that any person aggrieved by a ruling of the director could appeal to the board of tax appeals and that "any party to the appeal" might appeal to district court from a final order of the board. It was contended that the director was not included within the category of "any party to the appeal." This court upheld that contention and ruled that the director had no right of appeal from the board's decision. We might add that since the *Sprague* decision was handed down the statutes have been amended and they presently give the director a right of appeal in plain language.

We are fully aware of the provisions of K. S. A. 60-2101 relating to the appellate jurisdiction of district courts in general, but are of the opinion they cannot prevail so far as appeals from the juvenile

court are concerned. As we have already indicated, the juvenile code presents a complete, full and comprehensive plan for the care, control, custody, training, treatment and discipline of delinquent children. The code provides its own procedures, including appellate procedures; it delineates by whom and how appeals may be taken and processed; and, in our opinion, it must be said to prevail over the general statute in such respects.

It is a familiar principal of law that a special statute will take precedence over a general statute in the same or similar field or area. (*Seltmann v. Board of County Commissioners*, 212 Kan. 805, 512 P. 2d 334, *Wulf v. Fitzpatrick*, 124 Kan. 642, 261 Pac. 838.) The rule has been applied where statutes relating to appellate procedure were involved. In *Clay Township v. Pebley*, 207 Kan. 59, 64, 483 P. 2d 1101, this court said:

". . . [W]here a statute specifically provides for an appeal, an appeal is to be governed by those provisions rather than by a general statute. . . ."

We are constrained to hold that the district court was without jurisdiction to hear the state's attempted appeal from the decision of the juvenile court. Such being the case this court likewise is without jurisdiction to hear this appeal. Many years ago it was said in *Armour v. Howe*, 62 Kan. 587, 64 Pac. 42, that where the district court was without power to hear and determine a cause it would follow that this court could not do so. In a more recent case, *Kowing v. Douglas County Kaw Drainage Dist.*, 167 Kan. 387, 390, 207 P. 2d 457, involving an attempted appeal from an order of the board of county commissioners to district court and thence to the supreme court, it was held:

"Where the district court had no jurisdiction of the subject matter of an appeal to it, this court does not acquire such jurisdiction by an appeal from a ruling of the district court." (Syl. ¶ 2.)

Although Waterman presents the jurisdictional question in his brief, it is far from clear, as we read the record, that he raised the question in either the juvenile court or the district court. It is immaterial, however, whether or not the point was raised in either of the courts below, inasmuch as a question going to jurisdiction may always be raised by this court on its own motion. (*Kowing v. Douglas County Kaw Drainage Dist.*, supra; *Thompson v. Amis*, 208 Kan. 658, 493 P. 2d 1259, and cases cited therein.)

The issue raised on Waterman's cross-appeal is stated in this fashion:

"The juvenile code of Kansas denies the incarcerated juvenile due process and fair treatment and is unconstitutional and repugnant at law."

K. S. A. 60-2103 (*h*) pertains to cross-appeals and reads as follows:

"When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which he complains, he shall within twenty (20) days after the notice of appeal has been served upon him and filed with the clerk of the trial court, give notice of his cross-appeal."

We have examined the record in some depth, and the only ruling we have been able to discover concerning which Waterman might complain, and he has pointed out no other, is the action of the district court in overruling his motion to dismiss the state's appeal. Other than the decision as to that single motion, which will merit later discussion, the decisions of both lower courts, juvenile and district alike, have been favorable to Waterman. The juvenile court refused to waive its exclusive original jurisdiction and the district court upheld that position even though, as we have already held, it lacked appellate jurisdiction in the matter. As the state points out, Waterman cannot complain of the ultimate decision of the juvenile court to retain jurisdiction of the case, inasmuch as his rights were not adversely affected thereby. Indeed, Waterman opposed any waiver of jurisdiction by the juvenile court; it is obvious from the record that he was not asking to be prosecuted under the criminal statutes of this state. Ordinarily a party cannot appeal from a judgment unless he has been in some way injured or aggrieved thereby. (*Anderson v. Carder*, 159 Kan. 1, 150 P. 2d 754; 4 C. J. S., Appeal & Error, § 183.) This is just as true in cases where constitutional issues are present as it is in others. (*Smith v. City of Kansas City*, 167 Kan. 684, 208 P. 2d 233; *Stone v. City of Wichita*, 145 Kan. 377, 65 P. 2d 595.)

Waterman's motion to dismiss the appeal remains to be considered. The motion was made at the commencement of the proceedings in district court and before any testimony was received. The basis of the motion, as we read the record, was that the state "cannot be in good faith" in taking the appeal, not that the act was unconstitutional. At only one point in a lengthy argument in support of the motion did Waterman's counsel refer even briefly to constitutionality and then only by way of warning the district court that the supreme court would find his client "had been delayed a speedy trial."

Without meaning to be technical or to evade our responsibility in any way, we are struck by the fact that up to this point in time the constitutional issue has never been presented to either of the lower courts as a basis for an appeal. No motion for dismissal on constitutional grounds or otherwise was filed in juvenile court, the court of original jurisdiction, while the oral motion presented in district court was to dismiss the appeal to that court, not to dismiss the proceedings then pending against Waterman. It is a rule of ancient vintage, to which this court has long adhered, that questions not raised in the trial court cannot be considered on appeal. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, § 304.) In our opinion Waterman is in no position to raise the constitutional issue in this court on his cross-appeal.

The appeal is dismissed with directions that the state's appeal to district court be dismissed and that the juvenile court proceed without delay to hear the pending charges in accordance with the laws pertaining thereto. The cross-appeal is likewise dismissed. Costs are assessed to the state.