No. 47,546

THE OLATHE HOSPITAL FOUNDATION, INC., a/k/a THE OLATHE COMMUNITY HOSPITAL, and SHAWNEE MISSION MEDICAL CENTER, INC., *Appellants*, v. EXTENDICARE, INC., THE KANSAS STATE BOARD OF HEALTH, STATE OF KANSAS COORDINATING COUNCIL FOR HEALTH PLANNING, *Appellees*.

(539 P. 2d 1)

Opinion filed July 17, 1975.

*Leonard O. Thomas,* of Weeks, Thomas, Lysaught, Bingham and Mustain, Chartered, of Kansas City, argued the cause, and *John O. Somers* and *David K. Fromme,* of the same firm; and *George A. Lowe,* of Lowe, Lowe and Lowe, of Olathe, were with him on the brief for the appellant, The Olathe Hospital Foundation, Inc.

*Thomas A. Sweeny,* of Kansas City, Missouri, argued the cause, and *Lyndus A. Henry,* of Overland Park, was with him on the brief for the appellant, Shawnee Mission Medical Center, Inc.

*J. Eugene Balloun,* of Payne and Jones, of Olathe, argued the cause, and *Ronald L. Bodinson,* of the same firm, was with him on the brief for the appellee, Extendicare, Inc.

*Wayne T. Stratton* and *Patrick M. Salsbury,* of Goodell, Casey, Briman and Cogswell, of Topeka, were on the brief for *amicus curiae,* Kansas Hospital Association.

The opinion of the court was delivered by

FOTH, C.: This appeal involves the "certificate of need" provisions of the Regional Health Programs Act, K. S. A. 65-2a01 *et seq.* That act provides, among other things, that any person proposing

to construct a new hospital to be licensed under the state's health laws must first secure a certificate of need (65-2a09). Such a certificate may be issued by either a regional "planning agency" established or designated under the act, or by an "appeals panel" on appeal from the action of a planning agency (65-2a06). Either the applicant for the certificate of need or any other health facility which believes its interests may be adversely affected by the decision of the appeals panel may appeal the decision of that body to the district court. (*Ibid.*)

The applicant for a certificate of need in this case was Extendicare, Inc., a Delaware corporation authorized to do business in this state, with headquarters in Louisville, Kentucky. Its stock is listed on the New York Stock Exchange. During the course of this litigation its name was changed to Humana, Inc., but it will be referred to herein as "Extendicare." It sought a certificate of need to build a 400 bed proprietary hospital in Overland Park, at 105th Street and Quivira Road.

Opposing the application were the Olathe Hospital Foundation, Inc., commonly known as the Olathe Community Hospital, and Shawnee Mission Medical Center, Inc. Both opponents are non-profit corporations operating hospitals in Johnson county, and neither welcomed the proposed arrival of a stranger to be located about halfway between them.

The procedure employed in passing on Extendicare's application will be discussed later at appropriate length. Highly summarized: The application was filed on November 10, 1972. The regional planning agency to which it was entrusted was the Mid-America Comprehensive Health Planning Agency (MACHPA), a nonprofit Missouri corporation designated by the Kansas state board of health as the planning agency for the counties of Johnson, Wyandotte and Leavenworth. It also serves as the Missouri planning agency for the counties of Jackson, Clay, Ray, Platte and Cass. MACHPA disapproved the application on March 28, 1973. Extendicare promptly appealed, and an appeals panel was convened. On May 16, 1973, that panel unanimously voted to grant the certificate. The Olathe Community Hospital and the Shawnee Mission Medical Center each appealed to the Johnson county district court, where the appeals were consolidated. On February 25, 1974, that court entered a memorandum opinion and order upholding the decision of the appeals panel, and finding independently that a

certificate of need should be granted. The Olathe and Shawnee Mission hospitals have appealed to this court.

We are met at the outset by Extendicare's motion to dismiss the appeal for lack of jurisdiction. The motion is based on the concept that the certificate of need legislation is an administrative enactment complete unto itself. It provides for an appeal to the district court, but makes no mention of an appeal to this court. In support Extendicare cites a number of cases where the legislature prescribed judicial review of administrative decisions by the district court but made no provision for review by this court, and we held that jurisdiction here was lacking. The leading cases are *Norman v. Consolidated Cement Co.*, 127 Kan. 643, 274 Pac. 233, involving the workmen's compensation act prior to 1929, and *National Bank of Topeka v. State*, 146 Kan. 97, 68 P. 2d 1076, involving inheritance tax orders. These, and nearly all other cases cited by Extendicare in support of its motion, were decided prior to the 1964 effective date of our present code of civil procedure. The only cited case decided under our present code is *In re Waterman*, 212 Kan. 826, 512 P. 2d 466. We there held that in the absence of statutory authorization the state could not appeal *to the district court* from an order of the juvenile court refusing to waive jurisdiction over a juvenile. Since the district court had no jurisdiction of the purported appeal, this court likewise had no jurisdiction of an appeal from the district court. We cited *Norman* and *National Bank*, but only by way of analogy for the proposition that the right to any appeal is purely a matter of statute.

The present statute conferring appellate jurisdiction on the courts generally is K. S. A. 60-2101. Subsection (*a*) provides that "[a] judgment rendered or final order made by a court or any other tribunal, board or officer exercising judicial or quasi-judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court." If no other means for taking an appeal are provided by statute, the aggrieved party may simply file a notice of appeal with the tribunal from whose order he is appealing. The district court is then to "review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require."

Subsection (*b*), dealing with this court, contains a broad grant of appellate jurisdiction:

"The supreme court shall have jurisdiction to correct, modify, vacate, or reverse any act, order, or judgment of a district court in order to assure that any such act, order or judgment is just, legal, and free of abuse."

We think this statute, in both its parts, reflects a legislative intent to furnish the complete gamut of judicial review to any decision of a judicial or quasi-judicial character. Thus, for example, in *Powers v. State Department of Social Welfare,* 208 Kan. 605, 493 P. 2d 590, we held that under 60-2101 (*a*) an appeal would lie to the district court from a quasi-judicial decision of an appeals committee of the state department of social welfare, despite the total lack of any appeal provision in the statute creating the appeals committee (K. S. A. 75-3306). Once it was determined that the district court had jurisdiction we had no misgivings about determining the merits of an appeal from that court, even though there is nothing anywhere in the statutes specifically providing for further judicial review of such an administrative decision. We did the same, against analogous procedural backgrounds, in *Neely v. Board of Trustees, Policemen's & Firemen's Retirement System,* 205 Kan. 780, 473 P. 2d 72; and *Lauber v. Firemen's Relief Association,* 202 Kan. 564, 451 P. 2d 488.

We have also exercised appellate jurisdiction without question in cases where the statute specifically provided for an appeal to the district court but, like this statute, was silent on an appeal to this court. *Kansas State Board of Nursing v. Burkman,* 216 Kan. 187, 531 P. 2d 122; *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P. 2d 614; *Lira v. Billings,* 196 Kan. 726, 414 P. 2d 13. Indeed, we even heard Extendicare's own appeal to this court under the very statute now involved, at least to the extent of determining whether it had standing to appeal to the district court in the first instance. (*Extendicare v. State Coordinating Council for Health Planning,* 216 Kan. 527, 532 P. 2d 1119.)

Under what auspices have we asserted jurisdiction in such cases? Although the question was not raised and the jurisdictional premise was therefore not articulated, it was necessarily under the grant of 60-2101 (*b*), authorizing this court to review any "act, order, or judgment" of a district court. In most cases, and in this case, our jurisdiction is invoked by an appeal as of right under K. S. A. 60-2102 (*a*) (4) from a "final decision in any action." It may be conceded that an appeal from an administrative agency is not an "action" in the sense that it is commenced in the district court by the filing of a petition and service of process. (See K. S. A. 60-203.) It may also be conceded, as will be noted later, that the decision of the appeals panel was purely administrative and not judicial or quasi-judicial. For our purposes that merely

means that in the absence of specific statutory authority no appeal would lie to the district court—*i. e.,* 60-2101 (*a*) would not be applicable. Compare *Thompson v. Amis,* 208 Kan. 658, 493 P. 2d 1259. Nevertheless, the review of any administrative decision by the district court is a judicial proceeding, requiring the court to perform judicial "acts" and to enter judicial "orders" and "judgments." If this court is to exercise its statutory jurisdiction to "assure that any such act, order or judgment is just, legal, and free of abuse," then that jurisdiction must be invocable, either through the normal appellate process or through an extraordinary remedy. We believe that in this type of case the legislature intended us to exercise appellate jurisdiction.

We therefore hold that once an appeal from an administrative agency is properly taken to the district court, either under a statute specifically authorizing it or under K. S. A. 60-2101 (*a*), a further appeal is authorized under the statutes dealing generally with appeals from the district court.

In a response to a reply brief filed after our hearing in this case Extendicare also suggests for the first time that the appeal to this court was not timely. The state board of health and its coordinating council for health planning were parties to this proceeding, and the notices of appeal were filed within the sixty days allowed by K. S. A. 60-2103 (*a*) where the state or an agency thereof is a party. The appeal was timely, we have jurisdiction, the motion to dismiss is overruled, and we shall proceed to the merits.

Before doing so, however, it is appropriate to determine just what we are reviewing and to define the scope of our review. The act we are dealing with calls for a first decision to be made by the regional planning agency for the area where the proposed facility is to be built. It then goes on to provide for appellate review by an administrative agency, the "appeals panel." This term is defined in K. S. A. 65-2a01 (*f*):

" 'Appeals panel' means a board of appeals composed of two representatives from and designated by the coordinating council for health planning and one representative from and designated by each approved planning agency, exclusive of the region or regions involved in the appeal. Members of the appeals panel shall not be affiliated with any of the parties, persons, agencies or institutions who are involved in the appeal."

The authority of the appeals panel, as well as of the planning agency, is set forth in 65-2a08:

"The planning agency, acting upon a request originally, or the appeals panel, acting as the appeals body, shall make one of the following decisions:

"(*a*) Approve the request in its entirety;
"(*b*) disapprove the request in its entirety;
"(*c*) approve the request subject to modification by the applicant, as recommended by the body involved."

It may be seen that the appeals panel is given exactly the same authority as the planning agency. A similar statutory scheme in our ad valorem tax assessment procedures was examined in *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 522 P. 2d 923. There statewide valuations were first made by the director of property valuation, subject to an appeal to the board of tax appeals. We held it was the *board's* decision that was subject to the limited judicial review of an administrative decision, not that of the director. We said that "it is not the function of the district court to ascertain whether the Director of Property Valuation has considered all of the applicable indicators of value prescribed by the legislature . . ., but whether the State Board of Tax Appeals, after hearing all of the evidence and making findings of fact, has entered orders assessing the property which are unreasonable, arbitrary, or capricious." (Syl. ¶ 13.) See also, *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P. 2d 147. And compare *Powers v. State Department of Social Welfare,* supra, where judicial review was of the decision of the department's appeals committee, and not that of the county board which had originally denied benefits.

Under 65-2a08 the appeals panel is to exercise its own judgment on a request. We therefore conclude that upon further review by the courts the decision of the appeals panel is the final administrative decision subject to judicial scrutiny.

The scope of judicial review in such a case is also well defined by our decisions. The appeal statute, K. S. A. 65-2a08, provides that on appeal from the appeals panel, "The district court shall try the appeal *de novo* and shall have the jurisdiction to affirm, modify, vacate, or reverse the approval or disapproval being appealed." It also provides that when an appeal to the district court is taken, "The coordinating council shall, within twenty (20) days after being served, file with the clerk of the district court all records of the planning agency, appeals panel, and coordinating council in the case, including the evidence taken at previous proceedings."

We have dealt before with legislative efforts to grant *de novo* trials where the subject of review is a purely administrative function such as the pre-licensing decision involved here. We have consistently held that the constitutional separation of powers limits the

courts to a limited form of judicial review. *Lira v. Billings,* supra; *Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239. And cf., *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P. 2d 828, 28 A. L. R. 3d 472; *Lauber v. Firemen's Relief Association,* supra; and *Neely v. Board of Trustees, Policemen's & Firemen's Retirement System,* supra.

The general rule on the scope of judicial review, found throughout all our cases and covering our own responsibility as well as the district court's, is succinctly stated in *Foote:*

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority."

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." (Syl. ¶¶ 1, 2.)

There being no question of fraud or the scope of the authority of the appeals panel, the question is whether the order is substantially supported by evidence. Or, as the Shawnee Mission hospital puts it in its brief, "Certainly the key issue involved in this litigation is whether there is a need for a new 400-bed hospital in Johnson County, Kansas."

The statute (65-2a06) specifies that:

"Every pre-licensing request for certificate of need shall include at least the following information which shall be used by the planning agency to determine if sufficient need exists for the proposed facility:

"(*a*) A description of the program and services to be provided;

"(*b*) the general geographic area to be served;

"(*c*) the population to be served, as well as projections of population growth;

"(*d*) the anticipated demand for the health service or services to be provided;

"(*e*) utilization of existing programs within the area to be served offering the same or similar health services;

"(*f*) projected cost estimates of capital expenditures and operating expenses;

"(*g*) projected staffing of the service;

"(*h*) schematic plan if construction is included in the application;

"(*i*) the anticipated benefits of the proposed program."

Extendicare's application was made on forms furnished for that purpose by the state board of health, designed to meet these statutory requirements. In its order refusing the certificate

MACHPA, the regional planning agency, focused on four supposed deficiencies. These were Extendicare's claimed failure to (1) propose a reasonable service area, (2) prove physician support within a proper service area, (3) reasonably define the proposed hospital services, and (4) demonstrate the impact of the new facility on the existing institutions in the proposed service area.

The trial court made findings of fact on each of these claimed deficiencies.

"(19) The application of Extendicare, Inc. contained a designation of the 'general geographic area to be served,' as required by statute. The designation of Johnson County as the 'general geographic area to be served' was a proper and acceptable delineation of service area. The court notes that most of the demographic data made available by MACHPA and others is established on a county by county basis. Johnson County, Kansas is an identifiable area with growth patterns and hospital needs that are readily definable by existing demographic data.

"(20) Although the Regional Health Planning statutes do not require a demonstration of physician support as a prerequisite to granting a certificate of need, adequate physician support was demonstrated for Extendicare's proposed hospital.

"(21) The health care services to be offered by Extendicare's proposed hospital were fully outlined in its application and before the appeals panel.

"(22) There is no reason to believe there would be an adverse effect on hospitals already located in Extendicare's probable service area in Johnson County."

The trial court's finding on each of these questions was supported by evidence which had been before the appeals panel. As to the latter three items: Physician support was evidenced by an independent survey taken by the mayor of Overland Park showing some 82 physicians wishing to join the active staff of a new hospital in that city; the services to be offered were set out at length in the application itself; and although there is a dispute as to the exact extent of their occupancy the record is replete with data bearing on the present utilization of the other two Johnson county hospitals.

The most serious argument centers on what should be the "service area" of the new hospital. Extendicare said, in response to the statutory requirement, that the "general geographic area to be served" would be Johnson county. The appellants, and MACHPA before them, insist that all of the metropolitan Kansas City area must be considered in determining whether new beds are needed in Johnson county. The trial court answered this contention in its findings, all supported by the record:

"(31) Only 35 per cent of Johnson County residents needing hospitalization receive care in Johnson County, while 50 per cent of Johnson County residents needing care receive hospital care in Jackson County, Missouri, and 15 per cent in Wyandotte County. Thus, 65 per cent of the Johnson County residents requiring hospital care must go outside the county for treatment.

"(32) Summaries of medical trips to both doctors and hospitals analyzed by MACHPA established that from 85 to 93 per cent of the medical trips originating in Jackson, Leavenworth and Wyandotte Counties terminated in the county of origin, while in Johnson County the percentage is only 65. The court finds that the percentage of patients who are Johnson County residents in Shawnee Mission Medical Center is 84.2 per cent, and in Olathe Community Hospital 95.1 per cent. Johnson County residents compose only from 8.3 to 15.9 per cent of the patients in Wyandotte County hospitals. Medical trip summaries establish that Johnson County residents desiring medical treatment will obtain it in their own county if available, but that there are not adequate in-patient facilities in Johnson County to service its residents.

"(33) Presently there are 297 hospital beds in Johnson County, located in Shawnee Mission, Olathe and Gardner hospitals, or 1.4 beds per thousand population in Johnson County. Johnson County has 20 per cent of the 1.25 million population in the Kansas City area, but only 4.5 per cent of the hospital beds.

"(34) Johnson County has a current population in excess of 220,000 reflecting an increase of over 50 per cent during the 1960's, and a projected population of about 300,000 by 1980. Population figures clearly indicate that the county will continue to experience heavy growth in and toward the southwest, where presently over one-half of the population now resides. The proposed location for the Extendicare hospital is in close proximity to the heavy growth area.

"(35) The court 'finds that health planning may be a valid concept, but that planning takes many shapes and forms. The court further finds that MACHPA's apparent health planning concept, namely that sufficient facilities in the Greater Kansas City metropolitan area mean no new facilities should be built in Johnson County, is not the only imaginable health planning concept, especially in view of the number of beds that fail to conform to minimum federal standards, particularly in Wyandotte County. The court further finds that locating health and medical facilities where the population is substantial and growing, while at the same time phasing out nonconforming facilities, is a valid health planning concept. Certainly, beds located in Jackson County, Missouri, are no answer to the needs of most Johnson County residents.

"(36) The court finds that an acceptable health planning concept must consider and provide for the health and medical needs of the service area, and that protection of existing health facilities from possible competition should not be undertaken in the name of planning at the expense of a public in need of hospital service.

"(37) There is a maldistribution of hospital beds in metropolitan Kansas

City. There are large numbers of substandard hospital beds in Greater Kansas City, to wit: 1,714 beds.

"The ratio of hospital beds per thousand population in Johnson County is extremely low. The use of Johnson County as a service area and the following of other political boundaries is reasonable due to census, demographic and other socio-economic data being thus accurately computed and evaluated.

"The fact that two-thirds of Johnson County patients are hospitalized outside the county more nearly proves that hospital beds are not available in the area than the proposition none are needed.

"Any new beds to be built in Greater Kansas City should probably be built in suburban areas where the population is expanding rapidly. There is a need for the hospital proposed in the Extendicare application and no substantial evidence is before the court to cause the court to modify the magnitude of such facility downward from the 400-bed request."

The trial court concluded on this basis, on facts which had been before both MACHPA and the appeals panel, that there was substantial evidence to support the finding of need by the appeals panel, while the decision of MACHPA denying the application was erroneous and without substantial support, and thus was arbitrary, capricious and unreasonable to the extent of being tantamount to constructive fraud.

Then, in deference to the statutory provision for a *de novo* hearing, the district court went on to conclude:

"The court, after a full review of all evidence in a trial *de novo* on the record, makes an independent finding that there exists a need for the proposed 400-bed hospital facility in Johnson County and that the Extendicare application should be granted. Any alleged irregularities in the appeals panel proceeding are irrelevant in view of the trial *de novo* and independent finding of need. Therefore, a certificate of need should be granted to Extendicare, Inc.

"The parties have each requested the court to take judicial notice of certain matters and have made offers of proof on certain matters of new evidence. It appears that had all such evidence been received the findings and conclusions would be the same.

"The application of Extendicare in all particulars complies with the requirements of law and speaks the truth. There has been no error or infirmity shown to the court that can prevent the building of the hospital Extendicare, Inc. wants to build. A certificate of need should be granted under every evidentiary option open to the court and under each of the tests for considering such evidence."

It must be apparent that whether there is a "need" for more hospital beds in Johnson county, and the extent to which available beds in Kansas City, Missouri, should be considered in determining that question, are at best subjects on which reasonable men might differ. The resolution of such questions is entrusted to the

administrative officials. We said of an analogous situation, where zoning questions are entrusted to the city governing body, "The most that could be said from the standpoint of plaintiff and those he represents is that the matter may be fairly debatable. That being so, the court may not substitute its judgment for that of the city in order to change the decision on the debate." (*Arkenberg v. City of Topeka,* 197 Kan. 731, 738, 421 P. 2d 213.)

On the "merits," then, the trial court was correct in upholding the administrative decision of the appeals panel—the courts may not substitute their judgment to change the decision on the debate.

The appellants, however, launch a barrage of complaints of a procedural nature, each of which they claim requires reversal:

It is contended that the whole proceeding is void because Extendicare's original application was not "complete." The statutes (65-2a02 and 2a03) require that an application be complete before it is considered by a planning agency, and authorize the agency to require additional information from an applicant before acting on it. In this case MACHPA made a series of demands for information which Extendicare met to the avowedly best of its ability. In particular, MACHPA was dissatisfied with Extendicare's definition of the proposed service area. At length, although still expressing its dissatisfaction, MACHPA formally considered the application and rejected it. On this issue the trial court concluded:

". . . Acceptance implies completeness. All information requested by the application form was prepared and presented, and the application was accepted and considered by MACHPA. Extendicare's application for a certificate of need was complete and legally sufficient."

We concur. On the one hand, MACHPA could not postpone a decision indefinitely by making unwarranted demands for unobtainable data. On the other, if MACHPA had a legitimate need for more information it should not have accepted the application as it did—apparently on the advice of counsel. Appellants do not now point to any substantial deficiencies in Extendicare's application and we discern none. It was, in the trial court's words, "complete and legally sufficient."

The Olathe hospital attacks the composition of the appeals panel. K. S. A. 65-2a01 (f), quoted above, requires one representative from each "approved planning agency" in the state (other than an agency involved) and two from the state coordinating council. Extendicare's appeal was filed April 16, 1973. The appeal was heard on May 16, 1973, the last day for doing so. The director

of the coordinating council for health planning of the state board of health notified the six approved planning agencies (other than MACHPA) to designate a representative, and two were designated from the council itself. The designee of one agency didn't appear for the hearing, so the appeals panel consisted of seven members. Prior to the hearing the members of the panel were furnished with transcripts of the MACHPA proceedings and the documentary evidence introduced at the MACHPA hearings. Its vote, as previously noted, was unanimous.

The present contention is that two of the agencies represented had received only conditional approval which had expired prior to the hearing, while three others which were approved on the Friday before the Wednesday hearing were not represented. The method by which the agencies selected their representatives is also challenged. In addition, it is said that the terms on the coordinating council of the two representatives from that body had expired, and they were not reappointed (retroactively) until some time after the hearing. Also, it is claimed the members of the appeals panel did not take a separate oath of office to serve in that capacity, or file statements of their substantial interests.

There was no doubt some informality in the manner in which the various agencies operated. No less could be expected from non-lawyers attempting to function under an act on which this court commented, "It cannot be said the Regional Health Programs Act is a model in the art of legislative draftsmanship. In fact, it leaves much to be desired if the Act is to be efficiently administered." (*Extendicare v. State Coordinating Council for Health Planning,* supra, p. 530.) Nevertheless the persons designated as members of the appeals panel assumed their duties as such under color of authority, performed those duties, and were recognized and accepted as public officers by all who dealt with them. These are the classic characteristics of a *de facto* officer. In *Railway Co. v. Preston,* 63 Kan. 819, 66 Pac. 1050, we quoted with approval the definition of a *de facto* officer found in the "landmark" decision of *State v. Carroll,* 38 Conn. 449, 9 Am. Rep. 409:

" 'An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised:

" '1. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people

without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be.

" '2. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.

" '3. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.' " (63 Kan. at 823.)

See also, *State, ex rel., v. State Office Building Commission,* 185 Kan. 563, 345 P. 2d 674; *State, ex rel., v. Hodgson,* 183 Kan. 272, 326 P. 2d 752; *State v. Roberts,* 130 Kan. 754, 288 Pac. 761; *Briggs v. Voss,* 73 Kan. 418, 85 Pac. 571. And cf., *Stawitz v. Nelson,* 188 Kan. 430, 362 P. 2d 629. If an objection is to be made to the authority of such an officer it must be made at the time he acts. An objection made on appeal is too late. *Parvin v. Johnson,* 110 Kan. 356, 203 Pac. 721; *City of Wellington v. Wellington Township,* 46 Kan. 213, 26 Pac. 415; *Higby v. Ayres and Martin,* 14 Kan. 331. Both appellants had notice of the hearing and both appeared and participated without objection. No timely objection to the composition of the appeals panel was made in this case, and its decision is not subject to the present collateral attack on the basis of its lack of authority.

The appellants also raise several evidentiary points, both at the appeals panel and district court levels. The biggest controversy turns on the role that should have been played by the "State Plan," a voluminous document promulgated by the state board of health. The MACHPA committee which first considered Extendicare's application made reference to it, but it was not certified to the appeals panel. The district court refused to admit it into evidence or take judicial notice of it. We believe its decision was correct for the simple reason that the state plan was not relevant. It was prepared under the authority of K. S. A. 65-412, which makes the board of health the "sole agency of the state for the purpose of:  . . .  (2) developing and administering a state plan for the construction of public and other nonprofit hospitals and medical facilities.  . . ." The primary purpose of the state plan, and the purpose of the enabling legislation, was to qualify this state for its share of the federal largesse which was formerly distributed for hospital construction under the Hill-Burton Act. Extendicare sought no such public assistance.

At the district court hearings the appellants offered the testimony

of an expert in the field of public health planning. The court rejected the proffered testimony, and all other new evidence, on the grounds that its review was limited to determining whether the action of the appeals panel was arbitrary, etc. As previously indicated, that concept of the scope of review was correct. Appellants, however, insist that this testimony would go to those issues which were properly within the scope of judicial review, relying on such cases as *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456; and *Rydd v. State Board of Health,* supra. In *Rydd* we said:

". . . The trial in district court then is *de novo* in the sense the court may take its own evidence and is not necessarily limited to the evidence presented before the administrative board. The power to receive and consider such evidence, however, is not to be employed for the purpose of enlarging the scope of judicial review—the test being the evidence must be *relevant* to the limited issue before the court on appeal. . . ." (202 Kan. at 732.)

This principle is subject to the important qualification that "a party appearing before an administrative body cannot produce his evidence piecemeal. He cannot produce part of his evidence before an administrative agency and then produce the balance on judicial review." (*Strader v. Kansas Public Employees Retirement System,* 206 Kan. 392, 402, 479 P. 2d 860.)

In *Keeney* we said:

". . . Parties attacking the reasonableness of an ordinance should not be precluded from the presentation of relevant evidence showing unreasonableness, even though such evidence was not presented to the governing body. This is not meant to imply that the hearing in district court should be a retrial on the merits of the zoning application, irrespective of whether or not a record was made of the city council's proceedings; neither does it imply that a party may lie in wait and ambush the other side at the district court hearing. The district judge remains armed with his usual discretion in admitting or rejecting evidence, and his rulings will not be disturbed unless substantial rights of a party are thereby affected." (203 Kan. at 394.)

We there found that some of the plaintiffs' rejected testimony should have been admitted, but went on to say:

"Although the trial court's ruling was unduly restrictive as to what evidence was admissible, the plaintiffs are not entitled to a reversal of the judgment. The court did not abuse its discretion in excluding certain evidence offered by plaintiffs, which was mainly repetitious of that given at the hearing before the city council." (Id., p. 395.)

In rejecting the expert's testimony the trial court said that it "recognize[d] many of the contentions of that alleged expert as having been mentioned at the various hearings the Court has held hereto-

fore on this matter." It went on to say that "Although there appears to be nothing startling or new in the offer of expert opinion by this witness," the court would have been glad to hear it—*if* it had been the licensing agency making the original determination. The clear import is that the testimony would have been cumulative, and was an attempt to retry the merits of the application. From our review of the proffer we concur. In this respect it was unlike the rejected testimony of the agency's appraiser in *Northern Natural Gas Co. v. Dwyer*, supra. That testimony went to the very basis of the administrative decision making process, and bore directly on the claim of arbitrariness. The testimony here consisted of the expert's views on good planning. MACHPA and the appeals panel would have found it relevant, but we do not believe it went to the issue of arbitrariness. The trial court therefore did not abuse its discretion in rejecting it.

Appellants complain because the trial court excluded a document called "Criteria for Certificate of Need Review," prepared by the board of health and distributed to regional planning agencies. In it the state board exhorts the planning agencies, in the most general terms, to make sure an applicant complies with the law and will be able to furnish good health services. We simply cannot see how the exclusion of this document, even if erroneous, prejudiced the appellants, or how its consideration would add anything on the new trial they claim its exclusion requires.

At about the same level is the complaint that the trial court refused "to take judicial notice of pertinent linear distances and other matters properly the subject of judicial notice." This point deals largely with two maps of the greater Kansas City area, offered in evidence for the first time in the district court. The court's response was:

"Well, the Court is going to take judicial notice that all administrative bodies, and all people involved in this entire chain of transactions has taken notice of the fact that there is a state line involved. I presume they all understand that there are county lines in the metropolitan area, also.

"The Court does not consider the map to be evidentiary, but a matter of common knowledge, and I am not going to make a recitation that I am taking judicial notice of your maps. But I certainly have a personal knowledge of geographical concepts of this area. I will ask that each of these two maps remain with the record, and you may use them as a part of your argument as you see fit."

Although the trial court may not have drawn the inferences from the maps that appellants would have liked, it is apparent that they

were considered. Other matters, dealing with population figures and the like, were in evidence in the voluminous documents in the record. Appellants point to no excluded data which would have affected the result, and hence demonstrate no prejudicial error.

It is contended that the appeals panel was required to make specific findings of fact; instead it merely announced, through its chairman, the result of its unanimous vote. There is nothing in the statute requiring findings of fact and, unlike the corporation commission, the appeals panel was subject to no rule or regulation requiring such findings. (Compare, *e. g., Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P. 2d 660.) We have said that specific findings by administrative agencies are desirable (*Neely v. Board of Trustees, Policemen's & Firemen's Retirement System,* supra) but we have also said they are not indispensable in the absence of a statute or rule requiring them (*Creten v. Board of County Commissioners,* 204 Kan. 782, 466 P. 2d 263). Failure to make findings is not fatal here, particularly in view of the extensive findings made by the trial court.

Neither is it fatal that the appeals panel, after its all-day public hearing, retired for a 25 to 45 minute deliberative session with only the director of health planning and an assistant attorney general present during its deliberations. K. S. A. (now 1974) Supp. 75-4318 calls for open meetings of bodies such as the appeals panel, and provides that "no binding action by such bodies shall be by secret ballot." One apparent purpose is to make public every official's vote on the public's business. There was no secret ballot here—the vote of the panel was unanimous, and each member's vote is a public record. In addition, the all-day hearing itself was an "open public meeting" at which the views of all the participants were aired. Under 75-4319 the deliberative session of the panel could have been an entirely lawful "executive meeting"—all that was missing was a formal motion to that effect. Such a brief session, coming at the time it did, was certainly not a "subterfuge to defeat the purposes of [the] act." There may have been a technical violation of the act, but there was no violation of its spirit. Knowing violation of the act is a misdemeanor, but there is nothing to indicate that the action taken at a meeting which is in substantial compliance with the act should be void. Neither the law nor good sense requires that this matter be sent back to the appeals panel for another vote.

Complaint is also made of the district court's findings, the assertion being that they do not cover in detail all the multitudinous pro-

cedural points raised. We find them wholly adequate to cover the issues in the case. The trial court regarded the matters complained of as mere "irregularities" which were neither substantial nor jurisdictional, and we agree. In addition, we find no reversible error in the court's making supplemental findings covering facts demonstrated by evidence which the parties had proffered but which the court rejected. The decision below was made independently of the rejected evidence, and the supplemental findings merely illustrated that the result would have been the same if such evidence had been considered.

Finally, it is argued that Extendicare's application should have been rejected because it proposes to operate the Johnson county hospital through a wholly owned subsidiary rather than directly. We think this is a matter entrusted to the licensing agencies. Neither MACHPA nor the appeals panel found anything objectionable in what is a common method of operation among business enterprises of national scope. When it comes time to license the hospital, under K. S. A. 65-428 the board of health may require of the licensee "affirmative evidence of ability to comply with such reasonable standards, rules and regulations as are lawfully prescribed" under the hospital licensure act. If the proposed subsidiary cannot furnish such "affirmative evidence" we would suppose guarantees could be exacted from the parent corporation, or it could be required to operate the hospital itself.

In summary, the burden was upon the appellants to demonstrate to the district court that the decision of the appeals panel was arbitrary, unreasonable or unlawful. They did not do so. The burden here was to convince this court that the district court was wrong. They have not met that burden either. The judgment must therefore be affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.