No. 50,678

Suburban Medical Center, Dodge City Regional Hospital, Humana of Kansas, Inc., and Humana, Inc., *Appellants,* v. Olathe Community Hospital, *Appellee.*

(597 P.2d 654)

Opinion filed July 14, 1979.

*J. Eugene Balloun,* of Payne & Jones, Chartered, of Olathe, argued the cause, and *Ron Bodinson* and *L. Franklin Taylor,* of the same firm, were with him on the brief for the appellants.

*George A. Lowe,* of Lowe, Terry & Roberts, of Olathe, argued the cause, and *Christopher B. Bacon,* of the same firm, was with him on the brief for the appellee.

*Robert M. Corbett,* of the Kansas State Department of Health and Environment, was on the brief as *amicus curiae.*

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by the appellant health facilities from the decision of the district court affirming the action of the Statewide Health Coordinating Council granting a certificate of need to Olathe Community Hospital to expand its facilities. All proceedings herein arise from the Health Facilities Act, K.S.A. 1976 Supp. 65-4801 *et seq.*

Before proceeding to the facts of the case, it would be helpful to identify the various entities involved:

1.  Suburban Medical Center, Dodge City Regional Hospital, Humana of Kansas, Inc., and Humana, Inc. (appellants herein). This group is involved, in one way or another, with Suburban Medical Center, a 400-bed hospital facility under construction in Johnson County. The facility is located in Overland Park, 6.5 miles from the site of Olathe Community Hospital. Humana, Inc., was previously named Extendicare, Inc., and bore that name in a previous case, *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P.2d 1 (1975). This group will be referred to herein as "Suburban."

2.  Olathe Community Hospital (appellee). This is a 100-bed hospital facility located in the city of Olathe, Johnson County, which is seeking a certificate of need to construct a 40-bed addition and related ancillary facilities at a projected cost of $7,600,000. This party will be referred to as "Olathe Hospital."

3.  St. Joseph Hospital. This is a new 300-bed hospital relocated from another site. It is situated in Jackson County, Missouri, at the junction of I-435 and State Line. The site is 12 miles from Olathe Hospital.

4. *Shawnee Mission Medical Center.* This is another Johnson County health facility in the process of constructing 112 additional beds to augment its existing 261 beds. This facility is 11 miles from Olathe Hospital.

5. *Mid-America Health Systems Agency.* This is the agency defined by K.S.A. 1976 Supp. 65-4801(*d*) and authorized by K.S.A. 1976 Supp. 65-4807 to review applications for certificates of need and report thereon to the secretary of health and environment. This agency will be referred to as "MAHSA."

6. *Kansas Department of Health and Environment* (*amicus curiae*). The secretary of this agency is the "state agency" pursuant to K.S.A. 1976 Supp. 65-4801(*c*) who reviews the report and recommendations of MAHSA with regard to applications for certificates of need and may approve, approve subject to modification or deny such application (K.S.A. 1976 Supp. 65-4808). This agency shall be referred to as "KDHE."

7. *Statewide Health Coordinating Council.* This was the "review agency" pursuant to K.S.A. 1976 Supp. 65-4801(*f*) designated to review decisions of KDHE relative to certificates of need during the period of time involved herein. The review procedures are set forth in K.S.A. 1976 Supp. 65-4809 *et seq.* The Statewide Health Coordinating Council shall be referred to herein as "SHCC."

8. *Mid-America Comprehensive Health Planning Agency. This was an agency whose authorized existence was July 1, 1972, to July 1, 1976, under the Regional Health Program Act, K.S.A. 1975 Supp. 65-2a01(d), and was superseded by MAHSA as a part of the statutory shift from regional to statewide health care planning. The old agency is involved herein to the extent that its adopted plan relative to the Johnson County area was admitted into evidence. The plan found no additional beds were needed. The successor agency, MAHSA, had adopted no plan and relied, in part, on the MACHPA plan in its recommendation for denial of the application. This agency will be referred to as "MACHPA."*

Having identified the major entities involved, we turn now to a chronological summary of events leading up to this appeal.

February 8, 1977 - Olathe Hospital filed its application with

MAHSA for a certificate of need for its proposed expansion project which included construction of 40 additional beds. MAHSA Resources Development Committee formed an ad hoc task force which held meetings, and a hearing, on the application.

March 31, 1977 - The task force voted 2 to 1 (with one abstention) to recommend to the MAHSA Resource Development Committee that the application be granted.

April 14, 1977 - MAHSA Resource Development Committee voted 7 to 3 to recommend that the MAHSA Board of Directors deny the application.

April 28, 1977 - MAHSA Board of Directors voted 13 to 9 to recommend KDHE deny the application.

May 23, 1977 - KDHE Certificate of Need Review Committee recommended denial of the application.

May 24, 1977 - KDHE denied the application on the following three grounds:

"1.  The full impact of the additional beds at Shawnee Mission Medical Center as well as the new Suburban Medical Center has not yet been determined. However, due to the close proximity of these projects to Olathe Community Hospital, it appears that the hospital needs of Olathe residents will be fulfilled.

"2.  The impact of hospitalization needs of citizens in Miami and Franklin Counties is minimal. Statistics show that less than 10% of Olathe Community Hospital's patient caseload are from these two counties. Statistics also show that the occupancy rates of the hospitals in Franklin and Miami Counties are only 67.48% and 62.87% respectively.

"3.  The total number of acute care hospital beds in Johnson County will rise to 904 upon completion of the 400 bed Suburban Medical Center. The draft Medical Facilities Plan of the Kansas Department of Health and Environment indicates a need for only 414 beds. The bed need was also calculated with the assumption that all residents of the Johnson-Wyandotte County service area who go to Missouri for hospitalization would remain in Kansas. Again, the projected bed need was 414 for Johnson County."

Olathe Hospital appealed the denial of its application to SHCC.

June 22, 1977 - Suburban requested to be a party to all relevant proceedings before the SHCC stating it believed the granting of the application would adversely affect it. Over Olathe Hospital's objection, Suburban's request was granted by the SHCC chairman. Pursuant to K.S.A. 1976 Supp. 65-4812 a hearing officer was appointed to conduct the hearing.

July 20, 1977 - Hearing held by SHCC hearing officer. The hearing officer subsequently prepared detailed proposed findings of fact and conclusions of law.

August 18, 1977 - Olathe Hospital sent to each SHCC member a copy of its own proposed findings of fact and conclusions of law, an 88-page memorandum, a brief, and a position letter. This procedure was apparently over the objection of the SHCC chairman.

August 22, 1977 - The hearing officer sent his proposed findings of fact and conclusions of law to each SHCC member. On the same date Suburban and KDHE sent each SHCC member their position summary and proposed findings of fact and conclusions of law.

August 31, 1977 - In a short meeting, SHCC conferred, granted the application, and adopted verbatim Olathe Hospital's proposed findings of fact and conclusions of law by a vote of 14 to 9 (4 members were absent and 1 left before voting).

September 8, 1977 - Suburban filed its notice of appeal with the district court.

November 22, 1978 - District Court entered its memorandum decision affirming SHCC, although finding the SHCC order was arbitrary and capricious. This decision will be discussed in greater detail elsewhere.

December 15, 1978 - Suburban filed its notice of appeal to the Court of Appeals from the judgment of the district court.

December 29, 1978 - Appeal transferred from Court of Appeals to Supreme Court.

January 24, 1979 - KDHE granted leave to file brief as *amicus curiae*, asking for reversal of district court and denial of the application.

Before taking up the issues relating to the merits we will consider the jurisdictional question raised by appellee. The appellee seeks dismissal of the appeal on the ground that Suburban is not a proper party. This same issue was raised at all relevant levels of the proceedings and determined adversely to appellee.

KDHE denied Olathe Hospital's application for a certificate of

need. Review of such is authorized by K.S.A. 1976 Supp. 65-4809. K.S.A. 1976 Supp. 65-4811 provides:

"Parties to the review proceedings shall be the applicant, the state agency, the health systems agency filing a written protest and the adversely affected health facility filing a written request for a hearing."

Olathe contends that since Suburban, in essence, was the winner under the KDHE decision, it was not an "adversely affected" health facility and therefore could not be a party to the review proceeding.

Suburban's written request to be included as a party to the SHCC review is as follows:

"Humana, Inc. [Suburban] believes that its interests will be adversely affected by a decision approving Olathe Community Hospital's application. For that reason, this letter should be considered a written request by Humana, Inc. to participate as a party in any proceedings before the Statewide Health Coordinating Council, which is designated as the review agency."

Olathe Hospital further contends that since Suburban was not a proper party to the SHCC proceedings, Suburban had no right of appeal to the district or appellate courts.

The issue as related to future cases has been eliminated by the 1978 amendment of K.S.A. 65-4811 as follows:

"Parties to the review proceedings shall be the applicant, the state agency, the health systems agency filing a written protest or requesting to be a party to a hearing requested by another party and the *potentially adversely affected health facility* filing a written request for a hearing or *requesting to be a party* to a hearing requested by another party." (Emphasis added.)

In support of its position Olathe Hospital cites *In re Waterman,* 212 Kan. 826, Syl. ¶ 1, 512 P.2d 466 (1973):

"The right to appeal is neither a vested nor constitutional right but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely."

The *Waterman* case is readily distinguished as the appeal to SHCC had already been taken by Olathe Hospital. Suburban merely sought to be a party to the appeal. Accordingly, we are not involved in the question of an unauthorized appeal as in *Waterman.*

It would be an incongruous result if Suburban could be a proper participant on the lower rungs of the ladder (MAHSA and KDHE) but not be a participant on the upper rungs of the ladder (SHCC and court cases) if its position prevailed on the lower

rungs—yet it could be a proper party on the upper rungs if the lower rungs ruled adversely to it.

We hold that the effect of the 1978 amendment to K.S.A. 1976 Supp. 65-4811 was a statutory clarification of legislative intent and may be construed with K.S.A. 1976 Supp. 65-4811. See *e.g., Kansas Savings & Loan Ass'n v. Rich Eckel Construction Co., Inc.,* 223 Kan. 493, 504, 576 P.2d 212 (1978).

We hold Suburban was a proper party to the SHCC proceeding, and therefore had the right to seek judicial review of the SHCC decision pursuant to K.S.A. 1976 Supp. 65-4816.

Before proceeding further we need to discuss the purpose of health facility planning legislation. An overview of such legislation is set forth in *Pratt v. Board of Thomas County Comm'rs,* 226 Kan. 333, 597 P.2d 664 (1979). Some additional statements relative to the legislation need to be made in light of the unique issues raised in this case.

During most of this country's history, the construction of health facilities has been purely a matter of local concern. Each community or area pretty much built whatever facilities it desired. The rapidly escalating cost of health care of the last decade has focused public attention on two aspects of hospital operation: (1) the need for an adequate supply of health facilities, and (2) the harm arising from an oversupply of hospital facilities in any particular locale. The law of supply and demand does not function to the public's advantage in the area of hospital facilities. Reduction of standards of service results in inadequate health care. Excessive construction and operation of facilities raises the cost of health services. Many operating costs of a hospital remain the same whether the hospital is operating at 50, 60, 70, or 80% capacity. The operating cost can only be passed on to the consumer in increased charges. The public, accordingly, has an interest in having adequate, but not excessive, hospital facilities available.

The increased public awareness of the problem has resulted in federal and state regulation of hospital expansion. The basic goal is that need, availability of staffing personnel, etc., must be demonstrated to a knowledgeable and impartial agency before substantial new construction is undertaken.

Various criteria have been established by the agencies involved to make such determinations. In this appeal the primary criteria

concern has been that of need for the facility. To a lesser extent there has been controversy over the criteria of available health care personnel for staffing the proposed expansion. An effort will be made to summarize the factual contentions of the parties as much as possible. The basic controversy is the proper delineation of the service area of Olathe Community Hospital.

Olathe Hospital contends that its service area is Olathe and parts of Miami and Franklin counties. Its statistics to demonstrate need are based on this definition of the service area.

Suburban contends that the service area is at least all of Johnson County. Its statistics relative to need are based on its definition of service area. It also contends that St. Joseph Hospital, across the county line in Jackson County, Missouri, should be considered as the facility is only 12 miles from Olathe.

Olathe's positions as to service area and need are diametrically opposed to its contentions in Suburban's earlier application for a certificate of need. (See *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P.2d 1 [1975], which proceeding was made a part of the evidentiary record herein.) MAHSA, KDHE, SHCC's hearing officer, and the district court all found against Olathe Hospital on the crucial areas of service area and need.

The concern of the agencies recommending denial was that the impact on Olathe Hospital of the new construction in progress by other area hospitals simply could not be ascertained at this time. Available hospital bed capacity was already being more than doubled by the previously authorized construction.

The agencies involved and the SHCC hearing officer (as well as district court) concluded the criteria relative to staffing was a problem. The evidence showed the trained manpower situation was tight without the additional pressure to come when facilities under construction were completed.

On appeal to the district court a major new issue arose. Suburban claimed that gross irregularities in the SHCC proceedings required reversal of its order. Numerous depositions of SHCC members and others (62 in all) as well as documentary evidence were introduced to establish that the decision of the SHCC resulted from improper consideration of extra-record evidence, improper "lobbying" by Olathe Hospital and others operating to assist Olathe, improper "lobbying" of some personally interested

SHCC members, and failure to review or consider the evidence properly admitted.

The trial court, in essence, found these allegations to be correct. The trial court specifically found and concluded, *inter alia:*

"19. Olathe Hospital, through its staff, board members, committees, elected officials, and other citizens, made improper contacts, directly and indirectly, with members of the quasi-judicial administrative body responsible for deciding the appeal by Olathe Hospital from an adverse decision by KDHE.

"20. Olathe Hospital, through its staff, board members, committees, elected officials, and other citizens, improperly imparted considerable extra-record information to the members of the quasi-judicial administrative body responsible for deciding the appeal by Olathe Hospital from an adverse decision by KDHE.

"21. Individual members of SHCC and the administrative body as a whole improperly considered extra-record information in deciding the Olathe Hospital appeal.

"22. Numerous SHCC members acted improperly in their support for the Olathe Hospital application by lobbying other members, using extra-record information for purposes of reviewing and supporting the request at the hearing, and by improperly accepting and initiating *ex parte* contact directly and indirectly with Olathe Hospital, a party to the proceedings.

. . . .

"25. SHCC, upon rejecting the proposed findings of its hearing officer, should have reviewed the record to make its own independent findings to support its conclusions.

"26. SHCC failed to make its own findings and conclusions of law, but merely adopted *in toto* the findings proposed by one of the parties to the proceedings.

"27. The gathering and using of extra-record information may be tantamount to arbitrary and capricious action by a quasi-judicial administrative body.

"28. The only satisfactory explanation of the SHCC decision in light of the record and the decisions made by all other agencies, committees and other persons responsible for the review of the Olathe Hospital application was the contact of SHCC members by the Olathe Hospital, directly and indirectly, through its staff, board members, committees, elected officials, and other citizens, and its consideration of extra-record information.

"29. The decision by SHCC to grant a certificate of need to Olathe Hospital . . . was arbitrary and capricious as a quasi-judicial act.

"30. The decision by SHCC to grant a certificate of need to Olathe Hospital was not so unreasonable in light of the record as to be clearly erroneous.

. . . .

"76. According to hearing officer Peterson's statement that he submitted to SHCC, he spent five hours at the July 20 hearings and 76.2 hours reviewing the record and preparing his proposed findings of fact and recommendations.

"77. SHCC Chairman Jarvis was the only other person connected with SHCC who reviewed the entire record in the Olathe Hospital matter.

"78. Hearing officer Peterson recommended to deny the application of Olathe Hospital for a certificate of need and set out his findings and conclusions in support of his recommendation."

The trial court concluded:

"54. If SHCC is to be considered as a quasi-judicial agency, it was certainly poisoned by the extra-record information and member contacts."

The trial court ultimately concluded that SHCC was acting in a legislative capacity in regard to the application, and affirmed the agency's order.

We turn to the issue of whether SHCC was acting in a legislative or quasi-judicial capacity in making its determination.

In *Olathe Hospital Foundation,* 217 Kan. 546, the actions of the review panel were held to be administrative. This determination is not controlling as the whole nature of the review has been altered by statutory amendment. K.S.A. 1976 Supp. 65-4810 *et seq.,* set forth a detailed formal procedure to be followed by the review panel which is totally consistent with due process procedural requirements.

The test for determining whether an action is judicial or legislative is set forth in the often quoted *Prentis v. Atlantic Coast Line,* 211 U.S. 210, 226, 53 L.Ed. 150, 29 S.Ct. 67 (1908):

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

The rules are set out more fully in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, Syl. ¶¶ 1-4, 476 P.2d 966 (1970):

"There is a distinction between the types of decisions rendered by different administrative agencies; and some such agencies perform judicial or quasi-judicial functions while others do not."

"In determining whether an administrative agency performs legislative or judicial functions, the courts rely on certain tests; one being whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make, and another being whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body."

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

"In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the

officer or agency which performs it, that determines its character as judicial or otherwise."

It is very clear that the proceedings before SHCC were not to set or fix criteria for use in determining the granting or denial of the application. Determination of criteria would be a legislative function. The proceedings were to determine whether a particular application met predetermined criteria. This was clearly a quasi-judicial function.

Having determined that SHCC was acting in a quasi-judicial capacity, the next issue is whether its conduct of the proceedings was appropriate. More particularly, was it incumbent upon the agency to comply with the requirements of due process, and if so, did it meet the requirements.

In *Adams v. Marshall,* 212 Kan. 595, 599-602, 512 P.2d 365 (1973), this court stated:

"Where an administrative body acts in a quasi-judicial capacity the requirements of due process will attach to the proceedings held before it. This principle was pointed out in *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System,* 205 Kan. 780, 784, 473 P.2d 72, where the court said:

" '. . . The constitutional guaranty of due process of law applies to administrative as well as judicial proceedings where such proceedings are *quasi* judicial in nature.'

"The pronouncement in *Neeley* is in harmony with the general rule expressed in 2 Am. Jur. 2d, Administrative Law, § 351, p. 163:

" 'The constitutional guaranty of due process of law applies to, and must be observed in, administrative as well as judicial proceedings, particularly where such proceedings are specifically classified as judicial or quasi-judicial in nature, or where the legislature is deemed to have intended the due process safeguard to apply. Procedure embodying due process requirements is essential not only to the legal validity of the administrative regulation, but also to the maintenance of public confidence in the value and soundness of this important governmental process. . . .'

"Two ground rules laid down by the Commission in this case are said by the plaintiff to violate basic due process demands: (1) the right to examine and cross-examine witnesses and (2) the right to an open or public hearing. We are inclined to agree.

"The right to the cross-examination of witnesses in quasi-judicial or adjudicatory proceedings is one of fundamental importance and is generally, if not universally, recognized as an important requirement of due process. This concept is emphasized by the text in 2 Am. Jur. 2d, Administrative Law, § 397, p. 202:

" 'A full hearing at which every party has the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts, is essential for wise and just application of the authority of administrative agencies. . . .'

"In speaking of due process requirements, the United States Supreme Court, in *Int. Com. Comm. v. Louis. & Nash. R. R.*, 227 U.S. 88, 93, 57 L.Ed. 431, 33 S.Ct. 185, said:

"'. . . All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding. . . .'

. . . .

"In 73 C.J.S., Public Administrative Bodies and Procedure, § 132, pp. 456-458, we find the essential elements of an administrative hearing summed up in this way:

"'An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be fair, or as it is frequently stated, full and fair, fair and adequate, or fair and open. The right to a full hearing includes a reasonable opportunity to know the claims of the opposing party and to meet them. In order that an administrative hearing be fair, there must be adequate notice of the issues, and the issues must be clearly defined. All parties must be apprised of the evidence, so that they may test, explain, or rebut it. They must be given an opportunity to cross-examine witnesses and to present evidence, including rebuttal evidence, and the administrative body must decide on the basis of the evidence. . . .'

"The requirements of an administrative hearing of a judicial or quasi-judicial character are phrased in this language in 2 Am. Jur. 2d, Administrative Law, § 412, p. 222:

"'. . . A hearing before an administrative agency exercising judicial, quasi-judicial, or adjudicatory powers must be fair, open, and impartial, and if such a hearing has been denied, the administrative action is void. . . .'"

The agency was required to make written findings of fact. The purpose of such a requirement is stated in *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, Syl. ¶¶ 2-4, 433 P.2d 572 (1967), as follows:

"The requirement that an administrative agency such as the State Corporation Commission make basic findings of fact is to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agency within its jurisdiction as prescribed by the Legislature."

"In making findings of fact, the State Corporation Commission should hear and weigh evidence, both as to its accuracy and credibility; should determine facts of a basic or underlying nature from attentive consideration of the evidence; should infer ultimate facts, usually in the language of the statute, from the basic facts, and should make its decision from that finding by application of the statutory criterion."

"In making basic findings of fact, the State Corporation Commission is not

required to state its findings with such minute particularity as to amount to a summation of all the evidence. It must assume, however, the responsibility of expressing the basic facts on which it relies with sufficient specificity to convey to the parties, as well as to the courts, an adequate statement of the facts on all applicable standards which govern its determination, and which persuades it to arrive at its decision."

We must conclude that the requirements of due process attached to the SHCC proceeding. The findings of the trial court as to the improprieties of the proceeding are supported by substantial competent evidence. Little would be gained by specifically enumerating the numerous improprieties. It is sufficient to say that massive pressure from within and without the agency was exerted; that extra-record evidence was considered; that improper contacts were made between SHCC members and Olathe Hospital boosters; and that only a small minority of SHCC members had reviewed the evidence. It is clear that the purpose of the health facility planning legislation to require, prior to hospital expansion, approval of a knowledgeable and impartial agency, was defeated. A fair decision on the merits was rendered impossible by the manner in which SHCC proceeded.

We do not determine under the evidence duly admitted whether the application should or should not have been approved. We hold, however, that the SHCC proceedings were so contaminated by irregularities and improprieties that the SHCC order must be vacated in accordance with K.S.A. 1976 Supp. 65-4816.

Olathe Hospital may file a new application for a certificate of need and the merits of same may be determined on the current situation, untainted by earlier proceedings, as the reviewing agency thereon would now be the State Corporation Commission pursuant to Executive Order No. 78-35 (December 12, 1978), issued pursuant to K.S.A. 1978 Supp. 65-4801(f).

The decision of the Statewide Health Coordinating Council granting the appellee's application for a certificate of need is vacated. The district court's judgment is affirmed as to its determination that Suburban (Humana, Inc.) was a proper party and is reversed as to its conclusion that the SHCC order should be affirmed.