(194 P.3d 1201)

No. 98,342

DAVENPORT PASTURES, LP, *Appellant,* v. MORRIS COUNTY BOARD OF COUNTY COMMISSIONERS, *Appellee.*

Opinion filed October 31, 2008.

*Greer S. Lang,* of Lawrence, and *Charles R. Rayl* and *Douglas P. Jones,* of Rayl & Jones, LLC, of Cottonwood Falls, for appellant.

*William A. Kassebaum,* county counselor, for appellee.

Before HILL, P.J., ELLIOTT and McANANY, JJ.

HILL, J.: This is an appeal from a district court order approving the Morris County Board of County Commissioner's award of $4,050 in damages to Davenport Pastures, LP. The Commission made the award because it had closed two unimproved roads that touched the north end of Mulvane Ranch, a ranch that Davenport had leased for cattle grazing. Davenport had asked for more than $300,000 in damages. Because the Commission acted within the scope of its authority and substantial competent evidence supports its award, we see no evidence of fraud; and the Commission does not appear to have acted arbitrarily or capriciously, we agree with the district court. We affirm.

*This case is back from our remand order.*

Mulvane Ranch is a large continuous tract of land found in both Morris and Chase Counties, with the north end of the ranch in Morris County. The north end of the ranch is all pasture, while all the improvements are found in the south end, located in Chase County. Public road access to Mulvane Ranch is also on the south

end of the ranch from Diamond Creek Road. That access has been unaffected by these proceedings.

Four platted, unimproved roadways reached the north end of the Mulvane Ranch, at least on paper. The parties referred to them as Roads 1, 2, 3, and 4. All four roads were undeveloped, rarely used, and very difficult to make out in the photos. Morris County closed Roads 1 and 2 on March 9, 1999. Davenport sought damages from that closure. At the time the Commission denied them any compensation. On appeal, the district court ruled Davenport's loss of access was compensable, entertained evidence on the loss, and made a monetary award to Davenport.

Here, we must point out this is the second appeal from this road closure dispute. We will refer to the first case as *Davenport I*, reported in *Davenport Pasture, LP v. Board of Morris County Comm'rs*, 31 Kan. App. 2d 217, 222, 62 P.3d 699, *rev. denied* 276 Kan. 967 (2003). In that appeal, the county commission appealed the district court's damage award. In ruling on the issue, a panel of this court decided that Davenport held a common-law right of access to the two closed unimproved roadways, Roads 1 and 2. Therefore, Davenport was entitled to compensation from their closure. But, we also held the district court exceeded its jurisdiction under K.S.A. 60-2101(d) when it determined damages by using a de novo standard of review. 31 Kan. App. 2d at 224-25.

In *Davenport I* we held:

"Although K.S.A. 60-2101(d) provides a district court with the ability to hear additional evidence, the Kansas Supreme Court has held that this review is not de novo. Rather, it is limited to the three issues listed above: whether the Board's decision was within the scope of its authority, whether it was supported by substantial competent evidence, and whether it was fraudulent, arbitrary, or capricious. [Citation omitted.] Because the Board did not conduct a hearing or find that *any* damages should be awarded, it did not reach the issue of the *appropriate amount* of damages. The district court had no decision before it that could be subjected to the three-point limited review outlined by our Supreme Court. Under these circumstances, it was error for the district court to rule on Davenport's amendment of the amount sought, to conduct a trial de novo, and to arrive at an award. Once it determined that the Board's decision denying compensation must be reversed, the district court should have remanded to the Board for further proceedings designed to set the amount." 31 Kan. App. 2d at 225.

We remanded the case on February 7, 2003, to the district court with instructions to return the case to the Commission for further proceedings to fix the compensation.

*The Commission made a damage decision.*

On remand, the Commission conducted a hearing to discuss the issue of damages, entertaining evidence from licensed appraisers. At the hearing, Davenport sought $382,965 as damages. To support its position, Davenport provided appraisals from Michael Hinkson and Joe Biggs. William A. Kassebaum, county counselor for Morris County, presented appraisals from David Sundgren and William G. Wilson. The damage appraisals varied greatly.

Naturally, the appraisals presented by Davenport were the highest. Hinkson, using a direct sales comparison of sales of 12 properties without road access advised the closure of Roads 1 and 2 caused a drop of $382,965 in the value of the ranch. Biggs, who also used a direct sales comparison of four ranches—two with no access—told the Commission the damages were $338,850. Sundgren, hired by Morris County, employed an unconventional approach to appraising this property which he called "cost to cure." Sundgren thought the damages amounted to $4,050. Wilson, also hired by the county, said the damages were $0.

Sometime later, the commissioners issued their findings in an order, drafted by their attorney Kassebaum. First, the Commission found that Road 4 provided reasonable access to the north end of the ranch but agreed that Road 4 was not as convenient as Road 1. Based on that inconvenience, the Commission relied on Sundgren's appraisal. After all, in its view, he was the only witness who had calculated the "loss of convenience." It adopted his assessment of damages of $4,050, which encompassed the costs of a drainage tube, some earth grading, and increased mileage to be incurred over several years.

The Commission declined to rely on Biggs' and Hinkson's figures, finding parts of their appraisals to be fundamentally flawed. The Commission believed that Biggs' assumption that all variance in value can be placed on loss of access, without considering the effect of location, water, fences, or soil type on value, made his

figure factually unsupported. Similarly, the commissioners determined that Hinkson's figure was not supported by the evidence. Hinkson had assumed there was all-weather access to the property before the road was vacated but no access after the closure. Also, he assumed the highest and best use of the property before vacating Roads 1 and 2 was to subdivide the ranch, and subdivision was no longer possible after the road closure.

*The district court approved the Commission's actions.*

Davenport appealed the award to the district court, raising many claims, including complaints about the commissioners. One rode with the county counselor to the north end of the ranch before the hearing to see what they could see. One commissioner twice drove himself to the north end of the ranch. Two commissioners admitted to looking at a county road map hanging on the wall of their meeting room. One commissioner looked at a county map in the Commission secretary's office. And, Davenport objected to the commissioners utilizing their long-standing policy of putting gravel only on roads that are school bus or mail routes. Davenport claims these actions denied it due process. Davenport also objected to Kassebaum, the county counselor, drafting the Commission's written decision.

In turn, the district court upheld the commissioners. Limiting its review to the standards determined in *Davenport I*, the district court held that (1) the Commission acted within its scope of authority; (2) the Commission's decision was supported by substantial evidence; and (3) the Commission's decision was not fraudulent, arbitrary, or capricious because (a) Kassebaum's actions in the case did not influence the Commission's decision and (b) the Commission members' considerations of evidence outside the hearing were minor infractions that did not prejudice the proceedings in a meaningful way.

Now, in this appeal, Davenport contends Kassebaum's participation in this hearing violated its right to due process. Also, the appellant argues the Morris County Commission denied it due process by considering evidence outside the damage hearing. Moving on, Davenport claims there is no substantial competent evidence

supporting the Commission's damage award. And, finally, Davenport believes K.S.A. 68-102a, 68-107, and 60-2101(d) are unconstitutional. We will address those issues in that order.

*The county counselor's participation was proper.*

In its findings, the district court showed that Kassebaum offered evidence at the Commission hearing, cross-examined witnesses at the hearing, and drafted the decision for the Commission. The court also found Kassebaum did not take part in deliberations for its decision.

Davenport asks us to reverse the district court's decision that Kassebaum's participation in this case is well within the bounds of proper conduct. It challenges the district court's findings, arguing that to sustain a finding of a denial of due process, actual harm need not be shown, citing cases from jurisdictions which have found proof of actual bias unnecessary if an appearance of bias exists. Davenport asserts that Kassebaum's dual role throughout these proceedings, as advocate during the hearing and legal adviser during deliberations, "created a probability of actual bias and impartiality on the part of the Board that is simply too high to be constitutionally tolerable."

We review this as a question of law and thus have unlimited review over the question of whether Davenport's due process rights were violated. See *Robinson v. Kansas Dept. of Revenue*, 37 Kan. App. 2d 425, 428, 154 P.3d 508 (2007).

First, we must point out in a quasi-judicial proceeding in Kansas, it is incumbent on the authority holding the hearing to comply with the requirements of due process in its proceedings. Simply put, due process requires the proceedings to be fair, open, and impartial. A denial of due process renders the resulting decision void. See *McPherson Landfill, Inc. v. Board of Shawnee County Comm'rs*, 274 Kan. 303, 305, 49 P.3d 522 (2002).

For support, Davenport points to two cases from Pennsylvania and one from California. First it cites *Horn v. Township of Hilltown*, 461 Pa. 745, 748, 337 A.2d 858 (1975), which held that due process rights may be violated if there is an appearance of impropriety in a quasi-judicial proceeding. That case dealt with a hearing

reviewing a proposed zoning ordinance. At the hearing, the Commission's attorney ruled on the evidence and objections made to the township's evidence, which were presented by the attorney himself. Also, the attorney advised the Commission in legal matters about the case. The court in *Horn* ruled that a governmental body charged with certain decision-making roles must not only be unbiased but also avoid the appearance of bias.

Davenport next cites *Newton Tp. Bd. Of Sup'rs v. Gr. Media*, 138 Pa. Commw. 157, 162, 587 A.2d 841 (1991), which held the mere potential for bias or the appearance of nonobjectivity may be enough to constitute a violation of that right. During the public hearings before the zoning board to raise the height of a radio tower, the township's solicitor served as a legal adviser to the Commission while also representing the township at the Commission hearing in arguing against the appellee's application. The court in *Newton* held the Commission failed to keep its role as an unbiased tribunal. It "create[d] an appearance of impropriety for the township's solicitor to serve as legal advisor to the Board in ruling on Appellee's conditional use application, and to also act in an adversarial capacity in opposition to the conditional use application." 138 Pa. Commw. at 162.

Davenport also cites *Quintero v. City of Santa Ana*, 114 Cal. App. 4th 810, 817, 7 Cal. Rptr. 3d 896 (2003), which found that the totality of the circumstances gave the appearance of bias and unfairness sufficient to show the probability of actual bias. In *Quintero*, the California Court of Appeal examined whether the city personnel board was biased because the deputy city attorney, who represented the city in this case, had at times also acted as counsel for the city personnel board. The court in *Quintero* stressed that dual representation by the city attorney's office was not barred so long as there is an enough separation of the two roles and the attorneys performing them. But, in this case, the *Quintero* court found the city did not meet its burden of showing the required separation. 114 Cal. App. 4th at 813-14.

No Kansas appellate court has adopted any of the rules found in Pennsylvania and California. Instead, Davenport asks this court to infer that Kassebaum's long-standing relationship with the Com-

mission as county counselor and legal adviser automatically creates a likelihood of bias, which violates its due process rights.

Despite making this argument, Davenport concedes that Kassebaum did not conduct himself in a manner to cause such bias to occur. Further, the evidence contained in the record on appeal fails to support the notion that Kassebaum's actions created an appearance of impropriety. First, the commissioners testified that Kassebaum did not influence their decision. Second, Davenport never requested Kassebaum to withdraw from any of the proceedings or for the Commission to retain separate counsel.

In our view, this evidence shows the Commission complied with the requirements of due process. Its proceeding was fair, open, and impartial, as required by Kansas law. Davenport fails to make a convincing argument that a due process violation has occurred when the evidence contradicts such an allegation. Compare this case with *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 361-62, 770 P.2d 423 (1989). In that case, the Racing Commission's grant of a racetrack license was not set aside based on claim of "an appearance of impropriety" because of certain relationships between a partner of a successful applicant and the attorney general and because there was no evidence that their relationship influenced any Commission members. Also, the statute required the attorney general to appoint assistant attorneys general to work with the Commission. The law specified that those attorneys would be solely responsible to the Commission. 244 Kan. at 361-62; see also *Colorado Motor Vehicle v. Northglenn*, 972 P.2d 707, 711 (Colo. App. 1998) (finding that a party challenging board's decision must prove staff member's bias had actual impact on Commission's decision to require recusal of Commission based on issue of impartiality).

Without evidence that an attorney's action in representing a board at a quasi-judicial hearing as well as advising the Commission has actually affected the Commission's decision, we will not find a due process violation.

*Viewing the roads and examining the maps is not reversible error.*

Davenport next contends consideration of evidence outside the hearing by the Commission violated Davenport's rights to due pro-

cess. A review of the commissioners' depositions reveals the following influenced the Commission's finding that Road 4 provided reasonable access:

a. Before the hearing, Commissioner F.J. Revere rode with Kassebaum to the north end of the ranch to personally view the roads;

b. Commissioners Jerry Britt and Darrell Miller looked at the county map that was hung on the wall of the Commission's conference room;

c. Commissioner Britt independently drove to view the roads on two occasions;

d. Commissioner Miller examined the road record map in Michelle Garrett's office (Michelle Garrett is the Commission's secretary); and,

e. The Commission's recognition of "a long-standing policy of Morris County to gravel only roads that are school bus or mail routes."

Our law on this point is well established. For an administrative hearing be fair, all parties must be apprised of the evidence so they may test, explain, or rebut it. "They must be given an opportunity to cross-examine witnesses and to present evidence, including rebuttal evidence, and the administrative body must decide on the basis of the evidence." *Suburban Medical Center v. Olathe Community Hosp.*, 226 Kan. 320, Syl. ¶ 4, 597 P.2d 654 (1979).

In this case, it is undisputed the Commission considered evidence outside the hearing. Unlike the case cited by the appellant in *Suburban Medical Center*, the type of evidence the Commission considered here did not render its decision unfair. First, commissioners viewing of the roads and maps merely duplicated evidence that had been presented at the hearing. Davenport's appraisers presented pictures and maps of the roads in their appraisals. Further, the commissioners' reliance on their unwritten policy was not improper. Our Kansas Supreme Court has held that "[w]hile a county is required to improve a county road, it is not required to surface it with gravel." *Neosho County Comm'rs v. Burdick*, 120 Kan. 698, Syl. ¶ 1, 244 P. 866 (1926). Under the facts of this case,

where it examined evidence that merely duplicated what was submitted, the Commission's examination of evidence outside the hearing did not violate Davenport's due process rights. We agree with the district court, the Commission members' consideration of extra-record evidence did not prejudice the proceedings in a meaningful way.

*Substantial evidence supported the district court's decision.*

Davenport first argues that substantial competent evidence did not support the Commission's finding that Road 4 provided reasonable access.

In making this review under K.S.A. 60-2101(d), we employ the same standards of review used by the district court. First, was the Commission's decision within the scope of its authority? Second, was it supported by substantial competent evidence? And, finally, was the decision fraudulent, arbitrary, or capricious? See *Davenport I*, 31 Kan. App. 2d at 222-23, 225.

On appeal, Davenport limits its challenge to the substantial competent evidence standard. Substantial evidence is " ' "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved." ' [Citation omitted.]" *Davenport I*, 31 Kan. App. 2d at 223. Davenport argues the evidence does not support the finding that Road 4 provides reasonable access.

Basically the Commission's compensation was comprised of the costs necessary for Road 4 to be roughly equivalent to the access provided by the two closed roads, Roads 1 and 2. They also included the added costs incurred from using Road 4 over Road 1. In limiting its award to these components, the Commission decided Road 4 provided reasonable access. For evidentiary support, the Commission relied on the testimony of Edward Teghtmeyer, who is the county road and bridge superintendent, and Biggs.

But for proper access, Davenport asserts the Commission should have included in its award the added costs required to remove a fence and other obstacles, such as trees, from Road 4 and therefore asks us to find the Commission's damage award was improper.

We find it difficult to adopt Davenport's position. First, Davenport never presented to the Commission any cost estimate for removing a fence running through the road or any other obstructions. Rather, the evidence shows that both of Davenport's appraisers expressly declined to use the cost to cure approach in their assessments, and without such evidence, as noted in the Commission's brief, the Commission lacked the means to consider the costs Davenport now requests.

Second, Davenport made no request for removal of the fence to the Commission. Davenport must recognize this. Commissioner Britt suggested in his deposition this is still an available choice:

"Q. [Davenport's attorney] Have the County Commissioners taken any action to direct the landowners that have a fence across Road 4 and down Road 4, . . . to remove those fences?

"A. [Commissioner Britt] No.

"Q. Do you have any current plans as you sit here today to do that?

"A. There—as soon as we have a request from someone that they'd like to use that road, why, it will certainly be done. So far nobody's requested that."

Third, we do not believe the Commission could provide Davenport with the authority, through paying a damage award, to remove these obstacles from Road 4. K.S.A. 68-115(a) charges the county engineer or the township trustee with the authority to remove these obstacles, and it does not appear that this duty can be delegated. See *State v. Deines*, 268 Kan. 432, 439, 997 P.2d 705 (2000) ("The County has no statutory authority to informally designate others as its agent to maintain county roads."); *Gronniger v. Board of Doniphan County Comm'rs*, 6 Kan. App. 2d 642, 644-45, 631 P.2d 1252 (1981) (K.S.A. 68-115 makes it the duty of each county engineer to open or cause to be opened all state and county roads, to keep the same in repair, and *"to remove or cause to be removed all obstacles that may be found therein."*). Any expenses for bringing Road 4 up to the appropriate standard must be born by Morris County, not Davenport. We see no valid reason to award Davenport money for what the county must do.

Our review of the record verifies the Commission's access finding. First, at the district court's trial in the first case, Teghtmeyer testified that he did not see any reason why Road 4 could not be

made into a reasonable access. Second, at the Commission hearing in this case, Biggs provided similar testimony; however, Biggs qualified his remark, stating that Road 4 could provide reasonable access *if* Road 4 was brought up to the standard for a minimum maintenance road. Therefore, because there is a factual basis for the Commission's finding which is supported by the record, we find that substantial competent evidence exists for the Commission's finding that Road 4 will provide reasonable access.

Davenport next asserts that substantial competent evidence did not support the Commission's finding that it would cost $1,650 to make Road 4 the same level as Roads 1 and 2. Mainly, Davenport challenges the Commission's reliance on Sundgren's appraisal, asserting that Sundgren lacked the qualifications to make such an assessment. In response, the Commission argues that Sundgren's assessment was factually supported because he provided a detailed basis for his estimate.

Davenport mistakenly argues that this estimate by Sundgren was to bring Road 4 up to standard. That is not so. The award was to cover the cost of improvements that needed to be made *on the ranch*, not on Road 4. Sundgren specified at the hearing:

"Roadway No. 4 is the road from the north to the northwest corner of the ranch. It is a viable access. It comes to the northwest corner of the ranch, and terrain that [*sic*] is not as good or not as friendly as the other two roadways, because when you enter the ranch you immediately gone [*sic*] downhill, and there's a draw that cuts through from fence to fence across that corner of the section, and you need to cross that draw and then you come back onto a plateau."

Later, during cross-examination Sundgren clarified the estimate:

"Q: [By Mr. Rayl] How did you arrive at the estimate for fixing Road No 4. at sixteen hundred and some dollars?

"A: [By Mr. Sundgren] That is not to fix Road No. 4 that is to let the property owner come into the property with equal access. See, if he comes in Road No. 1 . . . Road No. 1 enters the ranch on level terrain so if he — if the Mulvane people come in there with a horse trailer full of horses or calves and they need to cut off towards the south end of the ranch, under normal circumstances they can do that if they come in on Road No. 4 which I say is not as good as Road No. 1 or Road No. 2, they've got to come in and go down a grade across that draw and up a hill. And I'm saying that if — if they're going to do that to them, they need to have the equal is equal [*sic*] on both sides of ranch, so they need to —

and the tube — so the estimate I got for a tube to put in that draw is a thirty-six inch tube and it's in my notes cost thirty to forty dollars a foot and I put a thirty foot tube plus an estimate what I think per hour grading would be to put some dirt on top of that to make it passable."

This is why he called his method "cost to cure." Sundgren viewed this as a matter of loss of convenience. After all, these roads were seldom, if ever, used.

Here, Davenport argued this issue before the district court at the summary judgment hearing. The district court rejected this argument and the record supports the district court's findings. Once the Commission determined that lessened access to the ranch had no effect on the overall value of the ranch, it viewed the "cost to cure" method as the standard for compensation. Under this method, neither of Davenport's appraisers presented an opinion. Sundgren's assessment was the only evidence. Davenport cross-examined Sundgren about his assessment and took the opportunity to undermine Sundgren's credibility by raising issue with his qualifications. But Davenport did not provide its own evidence to rebut Sundgren's estimates or seek a continuance to get experts to challenge these estimates.

This case is similar to *Corder v. Kansas Board of Healing Arts,* 256 Kan. 638, 653, 889 P.2d 1127 (1994), where our Supreme Court summarily examined the issue whether the expert's testimony was inadmissible in an administrative license suspension because it did not satisfy the requirements of K.S.A. 60-456(b). The *Corder* court applied an abuse of discretion standard: "The admission of evidence before the Commission and ultimately before the trial court is a matter left to the sound discretion of the trial court." 256 Kan. at 653. In finding the record supported the trial court's rulings on admissibility of the expert testimony, the court in *Corder* held that no abuse of discretion occurred. 256 Kan. at 653.

Similarly, the record supports the trial court's findings here. Sundgren's assessment was supported by the evidence in the record. We find no abuse of discretion occurred in admitting Sundgren's opinion about what was required for access to Road 4. His

testimony supplies substantial competent evidence for the Commission's award.

*We do not hold K.S.A. 68-102a, 68-107, and 60-2101(d) unconstitutional.*

K.S.A. 68-107(1) allows a damage award from vacating roads to be paid by the county. In Davenport's view, this makes the county an adverse party because it pays the award. Under this premise, Davenport contends K.S.A. 68-102a, 68-107, and 60-2101(d) are unconstitutional since (1) K.S.A. 68-102a wrongfully permits the Commission, as an adverse party, to decide the issue of damages, and (2) if that decision is challenged on appeal, K.S.A. 68-107 and 60-2101(d) infringe upon the district court's ability to review that decision de novo.

It is important to review the statutes at this point. K.S.A. 68-102a vests the Commission with the authority to fix damages resulting from vacating of roads. Relevant to this case, the statute states:

"Proceedings for the award of damages, if any, to the property owners affected by such action, and any appeal therefrom, shall be made in the same manner as provided in K.S.A. 68-107, and amendments thereto. Any person or persons may make written application to the county commissioners for payment for damage to property caused by such action. . . . *The county commissioners shall determine the amount of damage sustained, if any, by such claimant."* (Emphasis added.)

After the Commission decides the damages, if any, to be awarded to a claimant, K.S.A. 68-107 sanctions an appeal of that decision to the district court. K.S.A. 68-107 states in part: "Any person feeling aggrieved by the award of damages made by the board of county commissioners may appeal from the decisions of said board of county commissioners to the district court pursuant to K.S.A. 60-2101."

Under K.S.A. 60-2101(d), the district court may hear more evidence in reviewing the Commission's decision.

"A judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal. . . . The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and

evidence, and enter such order or judgment as justice shall require." K.S.A. 60-2101(d).

But, the district court's scope of review is limited to "whether the board's decision was within the scope of its authority, whether it was supported by substantial competent evidence, and whether it was fraudulent, arbitrary, or capricious." *Davenport I*, 31 Kan. App. 2d at 225.

Basically this issue raises the question of whether the Commission acting in a quasi-judicial capacity can decide damages in a fair and unbiased manner when the county is financially responsible to pay the damage award. Does the district and appellate courts' limited review fail to ensure the decision is valid?

Our courts have recognized this potential conflict in other situations:

"We recognize a board of education has a dual role as both an administrator and a quasi-judicial body. Regardless of the inherent difficulty in the conflict of these roles, the teacher's entitlement to a 'fair and impartial decision' (K.S.A. 72-5439[f]), requires that the Board strive for a high standard of detached objectivity when performing its role as a quasi-judicial body. Attainment of this standard demands the Board abandon its role as prosecutor after the due process hearing and make a good faith review of its previous tentative decision in light of the case presented to the hearing committee. Accordingly, board members should refrain from discussing the case with any persons other than fellow board members and counsel from the date the hearing is completed until the Board renders its final decision." *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 77-78, 661 P.2d 368 (1983).

Thus, our courts have safeguarded an individual's constitutional guaranty of due process by applying the scope of review under K.S.A. 60-2101(d). See *Unruh v. U.S.D. No. 300*, 245 Kan. 35, 43, 775 P.2d 171 (1989) (upholding district court's conclusion the Commission acted arbitrarily and capriciously, resulting in denial of due process); see also *Haddock*, 233 Kan. at 69, 77-78 (affirming district court's conclusion the Commission's decision was not supported by substantial competent evidence and Commission had denied teacher's right to due process).

These standards of limited review were first developed in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968), and now govern administrative law cases under K.S.A. 60-

2101(d). See *In re Residency Application of Bybee*, 236 Kan. 443, 444, 691 P.2d 37 (1984) (stating the limited scope of review under K.S.A. 60-2101[d] was defined in *Foote*).

In summarizing the rules from cases dealing with the scope of judicial review of administrative actions, *Foote* expressly stated:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority." 200 Kan. at 450.

*Foote* reasoned the limited review was necessary because:

"Constitutional grounds aside, an interpretation permitting a wider scope of review, such as a de novo determination, would amount to virtual disregard of the specialized nature of the board and make it a mere way station en route to the seat of real authority—the particular district court judge to whose lot the appeal fell." 200 Kan. at 451.

In *Yuille v. Pester Marketing Co.*, 9 Kan. App. 2d 464, 465, 682 P.2d 676 (1984), the court explained the reasoning behind this limited review:

" 'A District Court, when conducting a review of administrative orders on appeal, *must distinguish between questions of law and questions of fact. This distinction is essential for preservation of the separation of powers between the governmental branches.* An agency is performing quasi-judicial functions when interpreting rules, regulations or statutes. A court is a higher judicial body and may substitute its judgment for that of an agency on questions of law. Usually a court will give much deference to the agency's interpretation of its regulations. [Citations omitted.]

" 'In determining facts, an agency is operating within its area of expertise. The scope of judicial review of agency actions which adjudicate facts, is governed by a [tripartite] test set out in Kansas State Board of Healing Arts v. Foote, 200 Kan. 447, 436 P.2d 828 (1968).' " (Emphasis added.)

No evidence has been presented to demonstrate the Commission's failure to act as a fair and unbiased tribunal when making its decision here. Even if we assumed a conflict was present, the scope of review set forth in K.S.A. 60-2101(d) safeguarded Davenport's guaranty to due process, which the district court properly applied to the Commission's determination of facts, *that is*, damages. These

statutes are not unconstitutional. There are checks on the Commission's findings.

Affirmed.